**GRUBB, Appellants,**

v.

**COLUMBUS COMMUNITY HOSPITAL et al., Appellees.**

[Cite as *Grubb v. Columbus Community Hosp.* (1997), 117 Ohio App.3d 670.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE05-663.

Decided Feb. 27, 1997.

*R. Michael Smith* and *Roger L. Weaver*, for appellants.

*Porter, Wright, Morris & Arthur, Joseph F. Elliott* and *Leslie A. Yovan*, for appellees.

PEGGY BRYANT, Judge.

Plaintiff-appellant, Harry Grubb, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendant-appellee, Columbus Community Hospital ("CCH").

According to plaintiff's assertions, on July 6, 1993, plaintiff underwent diagnostic testing at CCH. After plaintiff underwent a magnetic resonance imaging ("MRI") scan, a CCH orderly placed plaintiff on a gurney and transported him to the next diagnostic procedure. As they reached a flight of stairs, the orderly asked plaintiff to get off the gurney and walk down the steps. Although plaintiff protested that he could not stand or walk because of the medication, the orderly nevertheless pulled plaintiff off the gurney and attempted to place him in an upright position. Just as plaintiff was standing nearly upright with his back facing the stairs, his legs buckled, the orderly lost his grip on him, and plaintiff tumbled backwards down the stairs.

From the time of the fall, plaintiff experienced, among other symptoms, neck pain, headaches, and cervical restriction, causing him to seek medical advice and treatment from Dr. Won G. Song. Dr. Song advised plaintiff that he had sprained his neck as a result of the fall. In early September 1993, plaintiff consulted Dr. Kenneth Saul and Dr. Gregory Mavian concerning his neck pain. After a series of diagnostic tests were performed, plaintiff was informed on September 23, 1993 that he had a herniated disc in his neck, which required immediate corrective surgery.

On September 1, 1994, plaintiff filed suit against CCH, the unknown orderly identified only as "John Doe," a "John Doe" corporation, and Dr. Song. In count one of the complaint, plaintiff alleged that the CCH orderly had been negligent in allowing him to fall down the flight of stairs; in count two of the complaint, plaintiff charged CCH and Dr. Song with malpractice for failing to properly diagnose his condition after the fall; and in count three, plaintiff's wife, Phyllis K. Grubb, charged defendants with the loss of consortium and services she endured as a result of her husband's injury.

On February 28, 1995, CCH filed a motion for summary judgment, asserting that all of plaintiffs' claims were time-barred by virtue of the one-year statute of limitations on "medical claims" contained in R.C. 2305.11(B). Following full briefing, the trial court issued a decision granting CCH's motion for summary judgment as to count one of plaintiff's complaint, finding that (1) the CCH orderly's alleged negligence constituted a "medical claim" as defined by R.C. 2305.11(D)(3), and (2) plaintiff failed to file his cause of action within the applicable statute of limitations. The trial court, however, denied the motion for summary judgment as to count two of the complaint, finding that plaintiff's malpractice action against Dr. Song had been filed timely.

Plaintiff eventually dismissed counts two and three of his complaint without prejudice and sought review of the trial court's decision under the first count of his complaint, assigning the following errors:

"I. The trial court erred by its conclusion that a fall down stairs is a medical claim within the ambit of R.C. 2305.11(D)(3).

"II. The trial court erred by its conclusion that appellant's cause of action against CCH accrued, and the one-year statute of limitations began to run, on July 6, 1993.

"III. The trial court erred by failing to consider and apply the 'termination of physician-patient relationship' rule.

"IV. The trial court erred in failing to determine that R.C. 2305.11(B)(1) and (D)(3) are unconstitutional as applied."

In accordance with Civ.R. 56, the evidence must be construed most strongly in favor of the nonmoving party; summary judgment should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A motion for summary judgment first forces the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, 275–276. If the moving party makes that showing, the nonmoving party then must produce evidence on any issue for which the party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, citing *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

Within those parameters, plaintiff's first assignment of error contends that the trial court erred in determining that his allegation of negligence against the CCH orderly constituted a "medical claim" as defined by R.C. 2305.11(D)(3), and

therefore was barred under the one-year statute of limitations of R.C. 2305.11(B)(1). R.C. 2305.11(D)(3) defines a "medical claim" as "any claim that is asserted in any civil action against a * * * hospital [or] against any employee or agent of a * * * hospital * * * and that arises out of the medical diagnosis, care, or treatment of any person. 'Medical claim' includes derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person."

In one of the two consolidated cases in *Rome v. Flower Mem. Hosp.* (1994), 70 Ohio St.3d 14, 635 N.E.2d 1239, Harold Eager, a patient at St. Vincent Medical Center, was injured when his wheelchair collapsed as he was being transported from physical therapy. In Eager's action against the medical center, the Supreme Court found that the transport of Eager was "ancillary to and an inherently necessary part of his physical therapy treatment." *Id.* at 16, 635 N.E.2d at 1242. Further, the court noted that Eager "was a patient of St. Vincent Medical Center and was assisted by an employee of St. Vincent who was required to use a certain amount of professional skill in transporting the patient in the wheelchair." *Id.* at 16–17, 635 N.E.2d at 1242. The court concluded that since the transport arose out of Eager's physical therapy treatment, Eager's injury arose from his "care or treatment" while at St. Vincent Medical Center, and was therefore a "medical claim" under R.C. 2305.11(D)(3). As Eager had failed to file his claim within one year of the time of his injury, his claim was barred by the applicable statute of limitations contained in R.C. 2305.11(B)(1).

▪ Here, plaintiff was injured as a CCH orderly escorted him from one diagnostic procedure to another. Under the rational of *Rome,* escorting plaintiff from one diagnostic procedure to another was "ancillary to and an inherently necessary part" of his medical diagnosis. Further, plaintiff was a patient of CCH and was assisted by an employee of CCH who was required to use a certain amount of professional skill in escorting plaintiff from one diagnostic procedure to the next. The need to escort plaintiff arose out of the diagnostic testing performed on him. Accordingly, pursuant to *Rome,* plaintiff's injury resulted from his "medical diagnosis" while at CCH and thus is a medical claim subject to the one-year statute of limitations contained in R.C. 2305.11(B)(1).

Plaintiff's attempt to factually distinguish *Rome* from this case is unpersuasive. For instance, contrary to plaintiff's assertions, no evidence suggests that the hospital employee who transported Eager from physical therapy had any more medical training than the CCH orderly who escorted plaintiff from one diagnostic procedure to another. In fact, the unreported appellate decision in *Rome* indicates that the hospital employee in question remained "unnamed" throughout the litigation, rendering it nearly impossible to determine from the record the employee's level of medical training. *Rome v. Flower Mem. Hosp.* (June 30, 1993), Lucas App. No. L–92–314, unreported, 1993 WL 241637. Moreover, the

hospital employee who transported Eager did not need any more or less "professional skill" to perform that task than CCH's orderly needed to escort plaintiff. Finally, the fact that the CCH orderly, unlike the employee in *Rome,* was not using medical equipment at the instant plaintiff fell does not take plaintiff's claim outside the *Rome* definition of "medical claim." The focus is whether employee actions are ancillary to and an inherently necessary part of a patient's medical diagnosis, care, or treatment, not whether medical equipment was a factor in the alleged negligence.

Accordingly, plaintiff's first assignment of error is overruled.

Plaintiff's second assignment of error contends that if his cause of action involving his fall down the stairs constitutes a "medical claim" under R.C. 2305.11(D)(3), then the trial court nonetheless erred in concluding that the one-year statute of limitations commenced on July 6, 1993; plaintiff contends that the limitations period should not have begun to run until September 23, 1993, the date he learned he actually had suffered a herniated disc as a result of the fall.

██ Pursuant to R.C. 2305.11(B)(1), "an action upon a medical * * * claim shall be commenced within one year after the action accrued * * *." "[A] cause of action for medical malpractice accrues and the statute of limitations commences to run when the patient discovers, or, in the exercise of reasonable care and diligence should have discovered, the resulting injury." *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438, syllabus. In determining the accrual date of a medical malpractice cause of action, the trial courts are to examine three factors: (1) the time at which the injured party became aware, or should have become aware, of the extent and seriousness of his condition; (2) whether the injured party was aware, or should have been aware, that the condition stemmed from a specific professional medical service previously rendered him; and (3) whether the condition would put a reasonable person on notice of the need to inquire about the cause of the condition. *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, paragraph one of the syllabus.

██ "The 'extent and seriousness of his condition' language of the [*Hershberger*] test * * * requires that there be an occurrence of a 'cognizable event' which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies." *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93, syllabus. The patient need not be "aware of the *full* extent of the injury before there is a cognizable event." (Emphasis added.) *Id.* at 133–134, 538 N.E.2d at 96. Rather, some noteworthy

or cognizable event which has occurred is sufficient if it does or should place a reasonable patient on notice that an improper medical procedure, treatment, or diagnosis has taken place. *Id.* at 134, 538 N.E.2d at 96–97.

Here, according to plaintiff's allegations, the CCH orderly requested that plaintiff walk down a flight of stairs, despite plaintiff's complaint that he could not stand or walk due to the medication he had received. As the orderly attempted to pull plaintiff into an upright position, the orderly lost his grip on plaintiff, and plaintiff tumbled backwards down the stairs. From that moment, plaintiff experienced neck pain, headaches, and cervical restriction, causing him to seek medical advice and treatment from Dr. Song. Although plaintiff did not become aware of the full extent of the injury he sustained until September 23, 1993, the fall and plaintiff's subsequent pain are a "cognizable event" which triggered the commencement of the one-year statute of limitations. *Id.* at 133–134, 538 N.E.2d at 95–97. Since plaintiff failed to file his complaint within one year after that event, his cause of action is time-barred under R.C. 2305.11(B)(1).

Insisting the present case is "nearly on all fours" with *Herr v. Robinson Mem. Hosp.* (1990), 49 Ohio St.3d 6, 550 N.E.2d 159, plaintiff nonetheless asserts that the limitations period should not have commenced until September 23, 1993, when he learned that he actually had sustained a herniated disc, rather than a simple sprained neck as Dr. Song had advised him. We disagree.

The principles contained in *Herr* are not applicable to the allegedly negligent act of the CCH orderly. The plaintiff in *Herr* consulted a number of physicians concerning back pain of unknown etiology. Only when the third of three physicians advised him of the cause of his problems did he recognize the negligence of the prior two physicians. In reaching its decision, the *Herr* court focused on the difficulty the average patient has in recognizing when the treating physician has committed an act of malpractice. By contrast, plaintiff here should have had no difficulty in determining the cause of the pain he experienced in his neck, even if he was unsure of the extent of the injury suffered: his fall down the stairs should have alerted him to the cause.

Accordingly, plaintiff's second assignment of error is overruled.

In his third assignment of error, plaintiff contends that under the "termination of the physician-patient relationship" rule of *Frysinger v. Leech* (1987), 32 Ohio St.3d 38, 512 N.E.2d 337, his cause of action against CCH for the alleged negligence of its orderly did not accrue until his relationship with Dr. Song ended; he further contends that a triable issue of fact remains regarding the date his relationship with Dr. Song ended. *Frysinger*, however, is plainly inapposite to plaintiff's claims against CCH for the actions of its orderly.

Paragraph one of the syllabus in *Frysinger*, which modified *Oliver, supra*, states that "a cause of action for medical malpractice accrues and the one-year statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, whichever occurs later." *Frysinger* thus can apply to situations where a patient knows or has reason to know that his or her physician has committed malpractice, but continues to consult with the physician despite that knowledge. *Frysinger* does not apply here, where the alleged tortfeasor is a hospital employee who does not have an ongoing professional relationship with the patient.

Moreover, even if we were to apply *Frysinger* to these facts through plaintiff's relationship with Dr. Song, who plaintiff asserts is an employee of CCH, plaintiff's complaint remains untimely: plaintiff admits that Dr. Song's treatment of plaintiff "continued until approximately the middle of August [1993], at which time the Physician–Patient relationship ended." Plaintiff did not commence this action until September 1, 1994, more than one year after the physician-patient relationship ended.

Accordingly, plaintiff's third assignment of error is overruled.

In his fourth assignment of error, plaintiff raises two constitutional challenges to R.C. 2305.11. Initially, plaintiff contends that "[b]y singling out medically caused personal injuries, based upon long debunked myths about a then pending 'malpractice crises,' the General Assembly violated the Equal Protection Clauses as well as the Due Process Clauses of the Ohio and United States Constitutions."

"The standard for determining if a statute violates equal protection is similar under state and federal law." *Adkins v. McFaul* (1996), 76 Ohio St.3d 350, 351, 667 N.E.2d 1171, 1173, citing *State v. Thompkins* (1996), 75 Ohio St.3d 558, 561, 664 N.E.2d 926, 929. As this case involves neither a fundamental right nor a suspect class, the statutory classification at issue must be upheld so long as it bears a rational relationship to a legitimate governmental interest. *Adkins, supra* (citing *Adamsky v. Buckeye Local School Dist.* [1995], 73 Ohio St.3d 360, 362, 653 N.E.2d 212, 214). Similarly, if the classification created by R.C. 2305.11(B)(1) is rationally related to its legislative purpose, there is no substantive due process violation. *Adkins, supra* (citing *Thompkins, supra*, at 560–561, 664 N.E.2d at 928–929).

■ The one-year statute of limitations for medical claims now contained in R.C. 2305.11(B)(1) was enacted in "response to what was largely perceived throughout the country to be a medical malpractice 'crisis' manifested by sharply increased medical malpractice insurance premiums, cancellation of policies, and

physician work slowdowns or stoppages." *Vance v. St. Vincent Hosp.* (1980), 64 Ohio St.2d 36, 40, 18 O.O.3d 216, 218, 414 N.E.2d 406, 408, overruled on other grounds by *Schwan v. Riverside Methodist Hosp.* (1983), 6 Ohio St.3d 300, 6 OBR 361, 452 N.E.2d 1337. The legislative purpose behind the one-year limitations period was to lessen the number of medical malpractice claims and thereby lessen the costs to health care providers and malpractice insurance carriers in order to alleviate the perceived crisis. See *Rome v. Flower Mem. Hosp.* (June 30, 1993), Lucas App. No. L-92-314, unreported, 1993 WL 241637, reversed on other grounds by *Rome v. Flower Mem. Hosp.* (1994), 70 Ohio St.3d 14, 635 N.E.2d 1239. Such a governmental purpose is legitimate, and the classification employed by the legislature is rationally related to achieving that purpose; thus, R.C. 2305.11(B)(1) violates neither the Equal Protection or Due Process Clauses of the United States Constitution nor their equivalent provisions in the Ohio Constitution. See *Scott v. Borelli* (1995), 106 Ohio App.3d 449, 456–457, 666 N.E.2d 322, 326–327 (one-year statute of limitations in R.C. 2305.11 and 2305.111 did not violate patient's due process or equal protection rights).

In his second constitutional claim, plaintiff argues that if the one-year statute of limitations period is constitutionally permissible, then the term "medical claim" contained in R.C. 2305.11(D)(3) must be defined in a rational manner to prevent absurd results. Essentially, plaintiff is arguing that defining the term "medical claim" to include the situation here is irrational. However, in finding that plaintiff's cause of action is a "medical claim" for purposes of R.C. 2305.11(D)(3), both the trial court and this court are compelled to apply the Ohio Supreme Court's decision in *Rome, supra,* as no material distinction can be drawn between the present case and *Rome.* Plaintiff's argument to change *Rome* is properly addressed to the Ohio Supreme Court.

Accordingly, plaintiff's fourth assignment of error is overruled.

Having overruled each of plaintiff's assignments of error, the judgment of the trial court is affirmed.

*Judgment affirmed.*

Bowman and Close, JJ., concur.