OPINION
Plaintiffs-appellants, Donald Cooke (hereafter "Cooke") and his wife, Phyllis Cooke, appeal an order of the Butler County Court of Common Pleas granting a motion for summary judgment in favor of defendants-appellees, Sisters of Mercy d/b/a Mercy Hospital, et al. (hereafter "Mercy"), thereby dismissing appellants' action based on the applicable statute of limitations contained in R.C.2305.11(B)(1). Appellants contend that their complaint sounds in simple negligence and that the trial court erred in finding, as a matter of law, that appellants' claims were "medical claims" as defined by R.C. 2305.11(D)(3). After considering both the briefs and oral arguments of the parties, we affirm the trial court's determination of this matter.
On October 17, 1995, Cooke underwent hip replacement surgery at Mercy Hospital in Fairfield, Ohio. Mercy filed an affidavit from Glenda Wharton, a nurse and clinical director at Mercy, who reviewed and provided Cooke's medical records dating from October 17, 1995 through October 31, 1995. Wharton states that Cooke's physician ordered him "up in chair daily" and that it was the nursing staff's responsibility to execute the postoperative orders prescribed by Cooke's physician. Accordingly, on October 18, 1995, Cooke was transferred from his bed to an upright position in a chair. Thereafter, Cooke indicated he wished to be transferred back to his bed.
In his affidavit filed below, Cooke states that two orderlies arrived to transfer him back to the bed, but before the transfer was complete, one was called away. Cooke states he told the remaining orderly that he would be incapable of placing him back into bed without assistance but the orderly proceeded to return Cooke to his bed. During the transfer, the medical records reveal that Cooke's balance became unstable, he began to shake and tremble, his arms buckled, and he fell back and hit the chair, dislocating his hip. Cooke's physician attempted to manually manipulate the prothesis, but was unsuccessful. Cooke returned to surgery on October 21, 1995.
As part of his postoperative treatment, Cooke's physician ordered the use of bucks traction. Such traction requires the use of a medical device known as an overhead trapeze. In his complaint, Cooke alleges that on October 23, 1995, the "trapeze apparatus * * * collapsed several times * * *." Further, the complaint alleges that as a result of the "dropping incident" and the "trapeze apparatus collapsing incident" Cooke "became extremely upset and emotionally distraught" and suffered "a heart incident or heart attack that required treatment." Cooke was discharged from Mercy on October 31, 1995.
Following Cooke's discharge, a series of letters were exchanged between the parties. On November 16, 1995, appellants' counsel notified Mercy that he had been retained to represent both Cooke and his wife, and that he would be in contact "as more information becomes available." On February 1, 1996, Mercy's Director of Claims and Risk Management, Michael Williams, responded to appellants' letter and requested that Cooke complete a medical authorization so that he could "appropriately investigate this matter." On February 12, 1996, appellants' counsel acknowledged receipt of the medical authorization and advised Williams of Cooke's current medical status. On May 22, 1996, appellants' counsel returned the completed medical authorization to Williams and provided him with documentation of Cooke's medical expenses to date. On December 27, 1996, appellants' counsel followed up with Williams and, for the first time, inquired as to whether Mercy would "entertain a demand for settlement before we actually go further." On January 6, 1997, Williams acknowledged receipt of the letter dated December 27, 1996, and advised appellants' counsel that the applicable statute of limitations had run and therefore, Mercy would not entertain a demand for settlement.
Appellants filed their complaint on January 9, 1997. In addition to alleging a claim for negligence against Mercy and the orderly, "John Doe," the complaint stated a claim for negligent supervision and a claim for spousal loss of consortium. No discovery other than the exchange of interrogatories between the parties was conducted.
On July 2, 1997, Mercy filed its motion for summary judgment contending that for purposes of the statute of limitations, appellants' action was a "medical claim" pursuant to R.C. 2305.11
and not a personal injury claim. Mercy argued that because appellants failed to bring their action within the applicable one-year statute of limitations, it was entitled to summary judgement as a matter of law. Appellants filed a memorandum in opposition to Mercy's motion on July 28, 1997. On September 10, 1997, the trial court sustained Mercy's motion, finding that as a matter of law[1] appellants' action was a "medical claim" pursuant to R.C. 2305.11 and was therefore barred by the applicable statute of limitations;[2] the doctrines of equitable estoppel and waiver were inapplicable to this matter; and[3] no one hundred eighty day letter had been sent in this matter. Appellants filed their notice of appeal on September 23, 1997.
Appellants raise a total of four assignments of error on appeal. In their first assignment of error, appellants contend:
 THE TRIAL COURT ERRED IN GRANTING A SUMMARY JUDGMENT ON THE FINDING THAT THE APPELLANTS' CLAIM WAS, AS A MATTER OF LAW, A "MEDICAL CLAIM."
In this assignment of error, the issue presented for our review is: whether the term "medical claim" as defined in R.C.2305.11(D)(3), includes a claim for hospital employees' negligence in executing treatment ordered by a physician, or a hospital employees' negligence when assisting in the use of an instrument or apparatus typically used in a health care setting; namely an overhead trapeze.
"When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Gerdes v. SuperAmerica, 1997 Ohio App. LEXIS 1553 (Apr. 21, 1997) Butler App. No. CA96-08-171, unreported, at 4, following Jones v. Shelly Co. (1995), 106 Ohio App.3d 440. Summary judgment is appropriate upon a "tripartite demonstration" that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(E); Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
With this standard in mind, we turn to the applicable statute of limitations found in the Revised Code. Generally, a plaintiff has two years to file a lawsuit for personal injury (see R.C.2305.10), however, if the injury is based upon a "medical claim," the statute of limitations is reduced to one year. Specifically, R.C. 2305.11(B)(1) provides: "an action upon a medical * * * claim shall be commenced within one year after the action accrued * * *."
The definition of "medical claim" may be found in R.C. 2305.11(D)(3):
 Medical claim" means any claim that is asserted in any civil action against a physician, podiatrist, or hospital, against any employee or agent of a physician, podiatrist or hospital, or against a registered nurse, midwife, or physical therapist, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person * * *.
In Browning v. Burt (1993), 66 Ohio St.3d 544, the Supreme Court of Ohio expounded upon the definition of "medical claim" by stating that a claim against a hospital is a medical claim
 only if the claim arises out of the medical diagnosis, care, or treatment of a person. The terms "medical diagnosis" and "treatment" are terms of art having a specific and particular meaning relating to the alleviation of a physical or mental illness, disease or defect.
Id. at 557.
The following year in Rome v. Flower Mem. Hosp. (1994),70 Ohio St.3d 14, the Supreme Court addressed a pair of consolidated cases where the term "medical claim" was again at issue. Plaintiff Rome, who was scheduled for x-rays, was strapped onto an x-ray table by a hospital intern who failed to fasten the footboard at the bottom of the table. When the table was elevated, plaintiff Rome fell and suffered injury. In the second case, plaintiff Eager was a patient being transported to physician prescribed physical therapy in a wheelchair, when the wheelchair collapsed causing injury.
The Supreme Court held that both plaintiffs were receiving services that were "ancillary to and an inherently necessary part" of their treatments or diagnosis. Id. at 16. In reaching its determination, the court relied upon the following factors:
 "(1) each was a patient of the hospital when injured; (2) each patient was ordered to undergo a diagnostic test or treatment by a physician; (3) each patient was being assisted by a hospital employee; and (4) each patient was injured en route to, or in the course of a service that was necessary to the treatment and alleviation of medical complaints." Long v. Warren Gen. Hosp. (June 27, 1997), Trumbull App. No. 97-T-5587, unreported, at 5, interpreting Rome. Similarly, citing Rome, the Tenth District Court of Appeals recently held that when a hospital patient suffered injury while being escorted by an orderly from one diagnostic procedure to another, it was "ancillary to and an inherently necessary part" of his medical diagnosis. Grubb v. Columbus Community Hospital (1997), 117 Ohio App.3d 670, 674, discretionary appeal not allowed (1997), 79 Ohio St.3d 1418.
In the instant case, Cooke was a patient of Mercy at the time of the alleged incidents of negligence. He was placed "up in chair" and in bucks traction pursuant to physician's orders. During both the alleged "dropping incident" and the "trapeze apparatus collapsing incident", Cooke was assisted by a hospital employee, an orderly "who was required to use a certain amount of professional skill," see Rome at 16, and any injuries sustained by Cooke transpired during the course of a service or treatment necessary to alleviate his medical complaints.
Furthermore, at least two appellate courts in Ohio have found that an injury resulting from the use of an instrument or apparatus generally used in a health care setting may give rise to claims properly classified as "medical claims" under R.C.2305.11(D)(3). Similarly, we find the that the collapse of Cooke's overhead trapeze, an apparatus generally used in a health care setting, is analogous to such cases.
Both the process of transferring Cooke to a chair after hip replacement surgery and placing him in bucks traction were "ancillary to" and "inherently necessary" parts of his treatment at Mercy. Rome at 16. Therefore, the trial court did not err in determining that, as a matter of law, appellants' complaint stated a "medical claim" rather than an action for simple negligence. Accordingly, appellants' first assignment of error is overruled.
In their second assignment of error, appellants contend:
 THE TRIAL COURT ERRED IN FINDING SUMMARY JUDGMENT THAT APPELLEES WERE NOT ESTOPPED FROM RAISING THE DEFENSE OF "MEDICAL CLAIM," OR THAT THEY HAD NOT WAIVED THE SAID DEFENSE.
In this assignment of error, appellants contend that they had entered into active settlement negotiations with Mercy's Hospital Administrator, Williams. Appellants argue that the trial court committed error by failing to construe the evidence in their favor and find that these negotiations estopped Mercy from raising the applicable statute of limitations as a defense. Further, appellants argue that trial court erred by failing to find that Mercy waived its statute of limitations defense. We disagree.
In Ohio, the estoppel doctrine may be used to prohibit the inequitable use of the statute of limitations. Wright v. Lorain (1942), 70 Ohio App. 337, 343. The rationale for this prohibition is to prevent a party from lulling an adversary into a false sense of security. However, in order "[t]o invoke this doctrine, the party must show that he reasonably relied upon a misleading statement." Schrader v. Gillette (1988), 48 Ohio App.3d 181, 183.
With respect to the issue of waiver, the Ohio Supreme Court has held that a waiver of the statute of limitations may occur when a party, "by its acts or declarations, evidences a recognition of liability * * *, and the evidence shows that such expressed recognition of liability and offers of settlement have led the [other party] to delay in bringing an action * * *." Hounshell v. Insurance Co. (1981), 67 Ohio St.2d 427, 431.
With this in mind, we find the evidence before us does not support a finding of estoppel or waiver. Appellants have put forth no evidence that (1) Williams made any misleading statements; (2) that they were misled by Williams' statements; (3) that they relied on Williams' statements to their detriment; (4) that Williams admitted liability on behalf of Mercy; or (5) that the parties were engaged in active settlement negotiations. In fact, there are only two letters authored by Mercy, or its representative, before this court; the February 1, 1996 letter and the January 6, 1997 letter.
Upon review of the evidence submitted below, the trial court concluded that Mercy had "made no representations to this plaintiff concerning its liability or the fact that it was open to negotiate the matter." Upon review, and construing the evidence in a light most favorable to appellants, we agree that neither letter addresses liability or settlement negotiations. Consequently, we find that Mercy is not estopped from raising the statute of limitations defense, nor did Mercy waive its statute of limitation defense. Accordingly, appellants' second assignment of error is overruled.
In their third assignment of error, appellants contend:
 IT WAS PLAIN ERROR FOR THE TRIAL COURT TO GRANT SUMMARY JUDGMENT FOR APPELLEES WHERE THE PLEADINGS, MOTIONS, EXHIBITS AND AFFIDAVITS CONTAINED A LETTER WRITTEN WITHIN ONE HUNDRED EIGHTY (180) DAYS OF THE INJURY.
R.C. 2305.11(B)(1) states that an action for a medical claim shall be commenced within one year of accrual unless,
 if prior to the expiration of that one-year period, a claimant who allegedly possesses a medical * * * claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced * * * within one hundred eighty days after the notice is so given.
This section has been interpreted as extending the statute of limitations for bringing a medical claim by one hundred eighty days when proper "written notice" is given.
In Ohio, the statute of limitations for a medical claim does not begin to run until the occurrence of a "cognizable event." Flowers v. Walker (1992), 63 Ohio St.3d 546, 549. A "cognizable event" is the "occurrence of facts and circumstances which lead, or should lead, the patient to believe that the physical condition or injury of which [he] complains is related to a medical diagnosis, treatment, or procedure that the patient previously received." Id. citing Allenuis v. Thomas (1989),42 Ohio St.3d 131 at syllabus. Thus, it is the cognizable event that compels a patient to investigate the facts and circumstances relevant to injury in order to pursue appropriate remedies.
In the instant case, the cognizable event took place the day Cooke was allegedly dropped in the chair or alternatively, the last day upon which the overhead trapeze collapsed. In his affidavit filed below, Cooke states that on October 17, 1995, "[u]pon hitting the chair I instantly felt intense pain" and that several days later when the overhead trapeze collapsed, he "became very upset." Thus, there can be no doubt from the evidence that prior to his discharge from Mercy in October 1995, Cooke had "discovered" his claim and was armed with the knowledge that he would have to further investigate any potential claims he had against Mercy if he wished to pursue them. Oliver v. Kaiser Community Health (1983), 5 Ohio St.3d 111. Therefore, Cooke had until October 1996 to file his potential claims. Yet the record reveals that he did not file his complaint until January 1997, a full three months after the statute of limitations had expired.
Appellants contend that proper "written notice," as required by R.C. 2305.11(B)(1), was given to Mercy in the form of the letter dated November 16, 1995, thereby tolling the applicable statute of limitations. However, Ohio case law provides that in order for "written notice" to toll the statute of limitations, the notice "must specifically state an action is presently being considered upon the claim." Kulow v. Crago (1995), 103 Ohio App.3d 138,140, citing Schrader v. Gillette (1988), 48 Ohio App.3d 181, paragraph one of the syllabus.
The November 16, 1995 letter does not specifically state that an action is "presently being considered," and upon review we find that the letter does nothing more than place Mercy on notice that appellants had retained legal counsel, and express counsel's belief that the injuries suffered by Cooke during his hospital stay were the result of negligence. Because we find the letter fails to state that a claim is "presently being considered," it is insufficient to toll the applicable statute of limitations. Accordingly, we affirm the trial court's finding that "no 180-day letter was sent in this matter" and appellants' third assignment of error is overruled.
In their final assignment of error, appellants contend:
 THE RULING OF THE TRIAL COURT IN GRANTING A SUMMARY JUDGMENT MOTION AGAINST THE APPELLANTS IS ERROR BECAUSE THE SAID STATUTE, AS APPLIED, IS UNCONSTITUTIONAL.
In their brief, appellants simply cite their final assignment of error and state that they do so in order "to preserve any and all rights to raise such claim as to constitutionality subsequently." No further argument is set out, nor is any legal authority cited to support their contention.
App.R. 12(A) "requires an appellant to brief and argue each assigned error separately." Contell Credit Corp. v. Rosenblatt (1988), 43 Ohio App.3d 113. Specifically, App.R. 12(A)(2) allows a court of appeals to "disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required by App.R. 16(A)." App.R. 16(A)(7) requires an appellant's brief to contain
 the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations of the authorities, statutes, and parts of the record on which appellant relies.
The requirement of App.R. 16 is particularly important when appellants raise constitutional issues in assignments of error.
 At a minimum where a statute is argued to be unconstitutional, the appellant must cite which section of the Constitution he contends is in conflict with the statute and he must state the reasons for his conclusion that the statute is unconstitutional. Absent this minimum compliance with the appellate rules, neither the appellee nor the appellate court can reasonably respond to the claim.
Foster v. Bd. of Elections (1977), 53 Ohio App.2d 213, 228.
Accordingly, because appellants have done nothing more than state that as applied, R.C. 2305.11 is unconstitutional, we will disregard this assignment of error. Appellants' fourth assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., concurs.
KOEHLER, J., dissents without opinion.
[1] While we recognize that effective January 27, 1997, the General Assembly amended the definition of "medical claim" to specifically supersede the Ohio Supreme Court's holding in Browning, we note such that such amendment was tailored to specifically and narrowly overrule the court's holding with respect to negligent credentialing. Therefore, this case is unaffected by the General Assembly's amendment.
[2] See Raggazine v. St. Elizabeth Hospital Med. Ctr. (Sept. 19, 1991), Mahoning App. No. 90 CA 129, unreported (hospital patient suffered injuries to her buttocks and lower back after allegedly being left on a bed pan for an extended period of time); and Zuckerman v. Metro-Gen. Hosp. (Apr. 30, 1992), Cuyahoga App. Co. 60407, unreported (hospital patient allegedly suffered injury from a negligently inserted intravenous drip bag during chemotherapy treatment).
[3] Since Rome, the Eighth, Ninth, and Eleventh District Court of Appeals have analyzed "medical claims" and arrived at analogous conclusions. See Blitz v. Marymount Hosp. (June 12, 1997), Cuyahoga App. No. 70725, unreported; Byrne v. Lorain Co. Cardiology (May 4, 1994), Lorain App. No. 93 CA005726, unreported; Long v. Warren Gen. Hosp. (June 27, 1997), Trumbull App. No. 97-T-5587, unreported.