[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} Plaintiffs, Judy Summers and her husband Lynn Summers (hereinafter "plaintiff"), appeal from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendant, Midwest Allergy Associates, Inc.
 {¶ 2} Defendant is an Ohio corporation that operates eight medical clinics throughout the state of Ohio, including one in Chillicothe, Ohio. On May 25, 1999, plaintiff visited the Chillicothe facility for a physician-ordered allergy treatment. While seated on a table receiving treatment, plaintiff was struck on the head by a falling cabinet that had broken loose from the wall above the table. As a result, plaintiff was injured.
 {¶ 3} On May 25, 2001, plaintiff commenced this action against defendant in the Franklin County Court of Common Pleas. In count one of the complaint, plaintiff alleged that defendant was negligent in failing to maintain the clinic in a safe condition and, more specifically, in allowing the wall cabinet to deteriorate into such an unsafe condition that it fell from the wall. In count two of the complaint, plaintiff charged that defendant failed to adequately treat her injuries. Specifically, plaintiff alleged that defendant negligently released her to drive home after determining that she sustained a concussion as a result of being struck by the cabinet. In the third count of the complaint, Lynn Summers charged defendant with the loss of consortium, services and society he endured as a result of his wife's injury.
 {¶ 4} On September 19, 2001, defendant filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C), arguing that plaintiff's causes of action constituted "medical claims" within the meaning of R.C.2305.11 and were therefore barred by the one-year statute of limitations set forth therein. Plaintiff disputed defendant's assertion and instead maintained that her complaint set forth "premises liability" claims subject to the two-year statute of limitations set forth in R.C. 2305.10. In a decision filed October 23, 2001, the trial court determined that it could not conclude, as a matter of law, that plaintiff's claims constituted "medical claims" subject to R.C. 2305.11 because it was unclear from the pleadings whether defendant fit the statutory definition of a "hospital" under R.C. 2305.11(D)(1).
 {¶ 5} Thereafter, on December 20, 2001, defendant filed a motion for summary judgment, again asserting that plaintiff's claims constituted "medical claims" which were time-barred by R.C. 2305.11. In an effort to dispel the trial court's concerns as to whether defendant qualified as a "hospital" under R.C. 2305.11(D)(1), defendant attached an affidavit from one of the physicians associated with the Chillicothe facility. Plaintiff neither responded to defendant's motion for summary judgment, nor moved for additional time to respond or additional discovery as permitted under Civ.R. 56(F).
 {¶ 6} By decision filed January 28, 2002, the court found that defendant, via submission of the physician's affidavit with its motion for summary judgment, met its initial burden of demonstrating the absence of any genuine issue of material fact as to defendant's status as a "hospital" under R.C. 2305.11(D)(1) and that plaintiff failed to meet the reciprocal burden imposed by Civ.R. 56(E). The court further found that plaintiff's claims fell within the broad definition of "medical claims" set forth in R.C. 2305.11(D)(3). Accordingly, the trial court concluded that plaintiff's claims were time-barred by the one-year statute of limitations set forth in R.C. 2305.11(B)(1). By judgment entry filed February 6, 2002, the trial court granted defendant's motion for summary judgment and dismissed plaintiff's claims against defendant with prejudice.
 {¶ 7} Plaintiff has timely appealed the trial court's judgment and advances two assignments of error, as follows:
 {¶ 8} "[1.] The trial court erred as a matter of law in granting appellee's motion for summary judgment when there were genuine issues of material fact and appellee was not entitled to judgment as a matter of law.
 {¶ 9} "[2.] The trial court erred as a matter of law in granting appellee's motion for summary judgment because appellants' claims were not medical claims and thus not subject to a one year statute of limitations."
 {¶ 10} We first address plaintiff's second assignment of error, as it is dispositive of the instant matter. Therein, plaintiff asserts that the trial court erred in granting summary judgment in favor of defendant. Specifically, plaintiff contends that the trial court erred as a matter of law in finding that plaintiff's claims were "medical claims" pursuant to R.C. 2305.11(D)(3) and were therefore barred by the statute of limitations set forth in R.C. 2305.11(B)(1).
 {¶ 11} Summary judgment is appropriate only where the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621,629, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,65-66.
 {¶ 12} In reviewing a trial court's disposition of a summary judgment motion, an appellate court applies the same standard as that applied by the trial court. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107. An appellate court reviews a summary judgment disposition independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Thus, in determining whether a trial court properly granted a summary judgment motion, an appellate court must review the standard for granting summary judgment set forth in Civ.R. 56, as well as the applicable law. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359.
 {¶ 13} With this standard in mind, we must determine the statute of limitations applicable to plaintiff's claims. In general, a plaintiff has two years to file a personal injury claim under R.C. 2305.10. However, if the injury is based upon a "medical claim," a plaintiff must file the claim within one year. Specifically, R.C. 2305.11(B)(1) provides, in pertinent part that "* * * an action upon a medical * * * claim shall be commenced within one year after the cause of action accrued * * *." "Medical claim" is defined in R.C. 2305.11(D)(3), as follows:
 {¶ 14} "`Medical claim' means any claim that is asserted in any civil action against a physician, podiatrist, or hospital, against any employee or agent of a physician, podiatrist, or hospital, or against a registered nurse or physical therapist, and that arises out of the medical diagnosis, care, or treatment of any person. `Medical claim' includes derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person."
 {¶ 15} R.C. 2305.11(D)(7) further defines "derivative claims for relief" to include:
 {¶ 16} "* * * claims of a * * * spouse of an individual who was the subject of any medical diagnosis, care, or treatment * * * that arise from that diagnosis, care, [or] treatment * * * and that seek the recovery of damages for any of the following:
 {¶ 17} "(a) Loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, or any other intangible loss that was sustained by the * * * spouse."
 {¶ 18} In Browning v. Burt (1993), 66 Ohio St.3d 544, the Supreme Court of Ohio recognized that not all claims asserted against a hospital are "medical claims" subject to the one-year limitation period set forth in R.C. 2305.11(B)(1). In particular, the court explained that a claim against a hospital[1] is a medical claim "only if the claim arises out of the medical diagnosis, care, or treatment of a person. The terms `medical diagnosis' and `treatment' are terms of art having a specific and particular meaning relating to the alleviation of a physical or mental illness, disease or defect." Id. at 557.
 {¶ 19} One year later, in Rome v. Flower Mem. Hosp. (1994),70 Ohio St.3d 14, the Ohio Supreme Court considered two consolidated cases in which the term "medical claim" was at issue. In the first case, plaintiff Rome was admitted to the hospital and thereafter scheduled for x-rays. She was placed on an x-ray table by a student radiological intern, who failed to fasten the footboard at the bottom of the table. When the table was tilted, Rome fell from the table and was injured. In the second case, plaintiff Eager was injured when a component of his wheelchair collapsed as he was being transported by a hospital employee from physician-ordered physical therapy.
 {¶ 20} The court held at the syllabus that "[t]he term `medical claim' as defined in R.C. 2305.11 includes a claim for a hospital employee's negligent use of hospital equipment while caring for a patient which allegedly results in an injury to the patient." In so holding, the court relied upon the following facts: (1) each plaintiff was a patient of the hospital when injured; (2) each plaintiff was ordered by a physician to undergo a diagnostic test or treatment; (3) each plaintiff was being assisted by a hospital employee who was required to use a certain amount of professional expertise in performing the service; and (4) each plaintiff was injured en route to, or in the course of, a service that was necessary to the treatment and alleviation of a physical or mental illness, disease, or defect. Id. at 16-17. See, also, Long v. Warren General Hosp. (1997), 121 Ohio App.3d 489, 492. The Rome court characterized the services each plaintiff received as "ancillary to and an inherently necessary part" of their treatment or care. Id. at 16.
 {¶ 21} Since Rome was decided, several appellate courts, including this court, have considered the issue of what constitutes a "medical claim" for purposes of R.C. 2305.11. In many of these cases, the courts have determined, based upon the specific circumstances before them, that the plaintiffs' claims constituted "medical claims" under R.C. 2305.11
subject to the one-year statute of limitations contained in R.C.2305.11(B)(1). For example, in Butler v. Jewish Hospitals, Inc. (May 3, 1995), Hamilton App. No. C-940119, the court held that the plaintiff's claim of permanent emotional distress constituted a "medical claim" where a nurse mistakenly blurted out, within earshot of the plaintiff, that plaintiff's husband had died.
 {¶ 22} In Grubb v. Columbus Community Hosp. (1997),117 Ohio App.3d 670, a hospital orderly placed the plaintiff, who had just undergone a diagnostic procedure, on a gurney and transported him to another diagnostic procedure. As they reached a flight of stairs, the orderly asked the plaintiff to get off the gurney and walk down the steps. Despite plaintiff's protestation that he could not stand or walk due to medication he had been administered, the orderly pulled plaintiff off the gurney and attempted to place him in an upright position. Plaintiff's legs buckled and the orderly lost his grip on him. As a result, plaintiff fell down the stairs and was injured. This court held that the plaintiff's claim of negligence against the orderly in allowing him to fall down the stairs constituted a "medical claim" subject to the one-year statute of limitations contained in R.C. 2305.11(B)(1). In particular, this court, citing Rome, found that the act of escorting the plaintiff from one diagnostic procedure to another was "ancillary to and an inherently necessary part" of the plaintiff's medical diagnosis. In so finding, this court noted that the plaintiff was a hospital patient; that the plaintiff was assisted by a hospital employee who was required to use a certain amount of professional skill in escorting the plaintiff; and that the need to escort the plaintiff arose out of the diagnostic testing performed on him. Id. at 674.
 {¶ 23} In Long, supra, the plaintiff was ordered by his physician to undergo a colonoscopy at a hospital. A nurse took the plaintiff to an examination room and told him to remove his street clothing and put on a hospital gown. Because the room was cold, the nurse advised the plaintiff to leave his socks on; no hospital slippers were provided. Some time later, an orderly arrived with a gurney, which was placed five feet from the bed upon which the plaintiff was seated. The orderly directed the plaintiff to walk to the gurney, offering him no assistance. Before plaintiff reached the gurney, the orderly instructed him to bring the pillow from the bed with him. As the plaintiff turned to retrieve the pillow from the bed, he fell and was injured. Relying on Rome and Grubb, the court determined that the term "medical claim" as defined in R.C.2305.11(D)(3) included a claim for the hospital employees' negligent instructions and assistance in transporting the plaintiff to the physician-ordered diagnostic procedure. In so holding, the court noted those factors of import in Rome: the plaintiff's status as a hospital patient; he had been directed by his physician to submit to the procedure at the hospital; he had been injured while responding to, and attempting to comply with, instructions given by the nurse and orderly; and transport of the plaintiff was "ancillary to and an inherently necessary part of" the plaintiff's diagnosis and treatment. Id. at 492.
 {¶ 24} In Biltz v. Marymount Hosp. (1997), 120 Ohio App.3d 526, the plaintiff, suffering from a grand mal seizure, was injured after he fell from an emergency room bed on which he was placed by hospital personnel. More than one year later, the plaintiff filed an action against the hospital, alleging that he was placed on the emergency room bed by hospital staff in order to facilitate the diagnosis and treatment of his seizure. The court, finding that the plaintiff presented a "medical claim" against the hospital pursuant to R.C. 2305.11 because his claim arose from the allegedly negligent use of medical equipment by the hospital staff, held that the plaintiff's failure to file his claim within the one-year statute of limitations in R.C. 2305.11(B)(1) barred his action.
 {¶ 25} In Cooke v. Sisters of Mercy (May 4, 1998), Butler App. No. CA97-09-181, the plaintiff underwent hip replacement surgery at a hospital. After surgery, the plaintiff's physician ordered that he be transferred from his bed to a chair every day. The nursing staff was responsible for executing the post-operative order. One day after the surgery, the plaintiff was transferred from his bed to a chair. When the plaintiff indicated that he wanted to be transferred from the chair back to his bed, two orderlies arrived to assist him. Before the transfer was complete, one was called away. Despite the plaintiff's insistence that the remaining orderly would be incapable of placing him back into the bed without assistance, the orderly proceeded to return the plaintiff to his bed. During the transfer, the plaintiff fell and hit the chair, dislocating his hip. He underwent surgery three days later. As part of the post-operative treatment, the plaintiff's physician ordered the use of bucks traction, which required the use of an overhead trapeze. Two days after surgery, the trapeze apparatus collapsed several times. In a complaint filed against the hospital, the plaintiff alleged that the "dropping incident" and the "trapeze apparatus collapsing incident" resulted in the plaintiff suffering a heart attack.
 {¶ 26} The court held that the plaintiff's complaint set forth a "medical claim" rather than an action for ordinary negligence. Relying on Rome, the court noted that plaintiff was a hospital patient at the time of the alleged incidents of negligence; that his transfer from the bed to the chair and the use of bucks traction was ordered by his physician; that during both incidents, the plaintiff was assisted by a hospital employee who was required to exercise a certain amount of professional expertise; and that the plaintiff's injuries occurred during the course of a service or treatment necessary to alleviate his medical complaints. The court found that "both the process of transferring [the plaintiff] to a chair after hip replacement surgery and placing him in bucks traction were `ancillary to' and `inherently necessary' parts of his treatment." Id. The court further found significant the fact that the plaintiff's injuries resulted, at least in part, from the use of an instrument or apparatus (the overhead trapeze) generally used in a health care setting.
 {¶ 27} In Harris v. Youngstown Osteopathic Hosp. (Aug. 26, 1998), Mahoning App. No. 95 CA 129, the court determined that the plaintiff set forth a "medical claim" under R.C. 2305.11 where, while undergoing post-operative treatment following hip replacement surgery, the plaintiff was burned on her buttock as a result of the improper use of a heating pad placed upon her by hospital employees. Citing Browning, supra, the court found that "the use of a heating pad during the course of post-operative treatment would be related to the alleviation of the physical defect for which [the plaintiff] was hospitalized. As a result, such care by a hospital employee will be equated to medical malpractice rather than negligence." Id.
 {¶ 28} In Flynn v. St. Vincent Mercy Medical Ctr. (Sept. 28, 2001), Lucas App. No. L-01-1241, the plaintiff filed a complaint after suffering injury when hospital personnel dropped her while transferring her from a surgery gurney to a hospital bed. In holding that the plaintiff's complaint set forth a "medical claim" as defined in R.C.2305.11, the court explained:
 {¶ 29} "* * * Transporting a patient from surgery to her hospital room is ancillary to and inherently necessary to that medical treatment. Placing her in a hospital bed facilitates her care in recovering from the surgery. Additionally * * * hospital personnel and hospital equipment was used in the commission of the allegedly negligent act. * * *" Id.
 {¶ 30} The plaintiff in Taylor v. Meridia Huron Hosp., Cuyahoga App. No. 80121, 2002-Ohio-3449, suffered injuries after he fell from a CT scan machine at the hospital. The plaintiff filed a lawsuit against the hospital contending that the fall resulted from the negligence of the radiology technician during the CT scan procedure. Applying Rome, the court held that the plaintiff's claim constituted a "medical claim" under R.C. 2305.11 because "the treatment which [the plaintiff] sought [at the hospital] was `ancillary to and an inherently necessary part' of her diagnosis and treatment." Id. at ¶ 26.
 {¶ 31} There are, however, at least two cases in which courts have held that claims against hospitals constituted ordinary negligence claims subject to the two-year statute of limitations contained in R.C. 2305.10
rather than "medical claims" subject to the one-year statute of limitations found in R.C. 2305.11(B)(1). In Balascoe v. St. Elizabeth Hospital Med. Ctr. (1996), 110 Ohio App.3d 83, the plaintiff was an emergency room patient of the defendant hospital. She was unable to get in or out of the hospital bed without assistance. On one occasion, however, she left her bed to use the bathroom without calling a hospital employee for assistance. On her way back to her bed, she slipped and fell on a piece of plastic left on the floor, suffering personal injuries. She filed a complaint alleging negligence on the part of the hospital in the maintenance of its premises.
 {¶ 32} The court rejected the hospital's reliance on Rome and characterized the plaintiff's claim as "a standard negligent maintenance claim unfortunately occurring on hospital premises." Id. at 85. The court held that the plaintiff's claim did not rise to the level of a "medical claim" as defined in R.C. 2305.11(D)(3) because her injuries did not arise directly from her medical diagnosis, care, or treatment, but rather arose from the alleged negligent maintenance of the hospital's premises. In so holding, the court recognized that "not all injuries sustained by a patient on hospital premises are `medical claim(s)' as defined in R.C.2305.11(D)(3)." Id.
 {¶ 33} Similarly, in Tayerle v. Hergenroeder (Dec. 10, 1999), Geauga App. No. 98-G-2195, the court found that the plaintiff's claim against her physician did not constitute a "medical claim" under R.C.2305.11. In that case, the plaintiff went to the physician's office to receive physical therapy after knee surgery. The plaintiff used a walker to aid her in walking. After completing the physical therapy session, the plaintiff attempted to leave without assistance. Although she successfully opened the spring-loaded door to the waiting room, the door hit her as she passed through it, causing her to fall. She suffered injuries as a result of the fall. The plaintiff commenced an action against her physician, alleging that he (or his employees) negligently permitted her to travel from the physical therapy room to the waiting room without assistance. The physician maintained that the action was a "medical claim" subject to the one-year statute of limitations contained in R.C. 2305.11. The court disagreed, finding that the claim was in the nature of a "slip and fall" case that happened to have occurred in a physician's office. The court determined that the plaintiff's claim did not constitute a "medical claim" because her injuries were not the result of a medical diagnosis, care, or treatment.
 {¶ 34} After carefully examining the facts and circumstances of the instant case in light of all the foregoing cases, we must conclude that the case sub judice more closely resembles Balascoe and Taylere, rather than Rome, Grubb, Long, Biltz, Cooke, Harris, Flynn, or Taylor. There appears to be no dispute between the parties that plaintiff was a patient at defendant's medical facility and that she was undergoing a physician-ordered allergy treatment at the time she was injured. However, the summary judgment materials before this court do not support a finding that the injuries plaintiff sustained when the cabinet fell on her head "[arose] directly from the medical diagnosis, care or treatment" of plaintiff. R.C. 2305.11(D)(3). There was no medical employee responsible for exercising professional expertise that was either responsible for, or could have eliminated, her injury. Further, plaintiff's injuries did not result from the use of an instrument or apparatus generally used in a health care setting. Consequently, we cannot find that she was "injured en route to, or in the course of, a service that was necessary to the treatment and alleviation of a medical complaint." Long, supra, at 492. The cabinet above the table where plaintiff was seated while receiving treatment simply fell from the wall and injured her. As has been recognized by the Ohio Supreme Court in Browning, supra, and the Seventh District Court of Appeals in Balascoe, supra, not all injuries sustained by a patient on hospital premises constitute "medical claims" as defined in R.C. 2305.11(D)(3).
 {¶ 35} In short, we find that the claim asserted by plaintiff in count one of her complaint does not rise to the level of a "medical claim" as used in R.C. 2305.11(B)(1) and defined in R.C. 2305.11(D)(3) since it did not arise directly from the "medical diagnosis, care or treatment" of plaintiff, but rather arose from the alleged negligent maintenance of defendant's premises. Accordingly, the trial court erred in dismissing count one of plaintiff's complaint on grounds that plaintiff's claim was barred by the statute of limitations set forth in R.C. 2305.11(B)(1). Having so found, we must also conclude that the trial court erred in dismissing on statute of limitations grounds Lynn Summers' derivative claim for loss of consortium.
 {¶ 36} We do agree, however, with the trial court's decision dismissing the second count of plaintiff's complaint. Therein, plaintiff alleged that defendant failed to adequately diagnose and/or treat her by releasing her to drive home after allegedly knowing that she had suffered a concussion as a result of being struck on the head by the cabinet. These allegations clearly set forth a "medical claim" as defined in R.C.2305.11(D)(3), as the claim "arises out of the medical diagnosis, care, and treatment" of plaintiff by defendant. Accordingly, the trial court was correct in finding that this claim is barred by the one-year statute of limitations contained in R.C. 2305.11(B)(1). Plaintiff's second assignment of error is sustained in part and overruled in part.
 {¶ 37} In plaintiff's first assignment of error, she contends that the trial court erred as a matter of law in granting summary judgment when there were genuine issues of material fact as to whether defendant fit the statutory definition of "hospital" set forth in R.C. 2305.11(D)(1). Our determination that plaintiff's first cause of action does not set forth a "medical claim" under R.C. 2305.11 and that plaintiff's second cause of action is barred under R.C. 2305.11 renders moot the first assignment of error. See App.R. 12(A)(1)(c).
 {¶ 38} For the foregoing reasons, plaintiff's first assignment of error is moot, and plaintiff's second assignment of error is overruled in part and sustained in part. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
TYACK, P.J., and DESHLER, J., concur.
[1] For purposes of discussion only, we consider defendant to be a "hospital" under R.C. 2305.11.