JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Kathy L. Van Doros ("Van Doros"), executrix of the estate of Donald R. Miller, deceased ("Miller"), appeals the trial court's decision, which granted summary judgment in favor of appellee, Marymount Hospital ("Marymount"). In addition, appellees Marymount and The Cleveland Clinic ("the Clinic") assert a cross-appeal, arguing that the trial court erred when it held that Van Doros had a good faith basis for continuing litigation. After a thorough review of the arguments and for the reasons set forth below, we reverse and remand.
 {¶ 2} The incident that gave rise to the present case began on June 30, 2003. On that day, Miller was admitted to Marymount Hospital for medical care. On July 5, 2003, at around 2:30 a.m., Thomas A. Madej, R.N. found Miller sitting on the floor beside his bed. Nurse Madej was an employee of Firstat Nursing Services ("Firstat"), but worked as a nurse at Marymount under a staffing contract between Marymount and Firstat.
 {¶ 3} When Nurse Madej discovered that Miller was out of bed, he did a brief assessment to determine if there were any injuries and helped Miller back into bed. He then asked a nurse's aid to check Miller's vital signs while he notified a house officer and prepared an incident report. When the aid assessed Miller's vital signs, he found that his blood oxygen level was extremely low and that he was unresponsive. The aid called Nurse Madej back into the room, and Nurse Made *Page 4 
called a resuscitation code. Resuscitation efforts proved unsuccessful and Miller died.
 {¶ 4} On October 26, 2004, Van Doros filed a complaint for negligence and wrongful death against Marymount, the Clinic, and John/Jane Doe, alleging that Marymount's agent and/or representatives were negligent in causing Miller's death. The complaint also alleged that Marymount and the Clinic were vicariously liable for Miller's death.
 {¶ 5} The case was scheduled for trial on September 20, 2005; however, Marymount and the Clinic filed a motion for leave to file a third-party complaint against Firstat and Nurse Madej. Van Doros also filed a motion for leave to file a third-party complaint. In addition, Marymount and the Clinic filed a motion to continue the trial and a good faith motion.
 {¶ 6} On September 14, 2005, the Ohio Supreme Court issued its decision in Comer v. Risko (2005), 106 Ohio St.3d 185, holding that any claim for secondary liability against a hospital fails if the statute of limitations has expired on the claim against a physician who is allegedly primarily negligent. In light of the Comer decision, Marymount and the Clinic filed a second motion to continue the trial and a motion for leave to file summary judgment, both of which were granted by the trial court.
 {¶ 7} On September 27, 2005, the trial court denied the good faith motion filed by Marymount and the Clinic. Van Doros filed a second motion for leave to file *Page 5 
an amended complaint to substitute Nurse Madej for John Doe and add his employer, Firstat, which was granted by the trial court. Marymount filed its brief in favor of summary judgment. In addition, Marymount and the Clinic filed a motion for reconsideration of the trial court's order granting Van Doros leave to file her amended complaint. They also filed a supplemental motion for summary judgment. The trial court set a new trial date of April 24, 2006.
 {¶ 8} On December 16, 2005, Firstat and Nurse Madej filed a demand for dismissal and intent to file a good faith motion, arguing that the statute of limitations had run on Van Doros' claim against them. They filed a second motion to dismiss Van Doros' complaint on January 6, 2006, and on February 3, 2006, the trial court granted their motions, stating that Van Doros had failed to serve them within one year of filing her complaint.
 {¶ 9} Van Doros filed her reply to Marymount's motion for summary judgment on March 6, 2006. The Clinic filed a motion for leave to file its own motion for summary judgment, and Marymount and the Clinic filed a joint reply to Van Doros' reply to Marymount's motion for summary judgment. Van Doros filed a motion to strike the Clinic's separate motion for summary judgment, and the Clinic filed a brief in opposition to the motion to strike. On March 30, 2006, the trial court denied Van Doros' motion to strike, allowing the Clinic to file its own motion for summary judgment. On April 3, 2006, the trial court determined that all of the documents filed by Marymount regarding Nurse Madej were privileged. *Page 6 
 {¶ 10} On April 10, 2006, the trial court granted summary judgment in favor of Marymount, holding that summary judgment was proper in light of the Comer decision because Marymount could not be held vicariously liable for Nurse Madej's actions when Van Doros failed to assert a timely claim against him. Although the Clinic had not yet submitted its individual motion for summary judgment, Van Doros filed a voluntary notice dismissing the Clinic and filed a notice of appeal on May 2, 2006.
 {¶ 11} Van Doros brings this appeal asserting four assignments of error. Marymount and the Clinic cross-appeal asserting one assignment of error.
 Van Doros Appeal {¶ 12} "I. The trial court erred by granting appellee's motion for summary judgment by erroneously applying Comer v. Risko retroactively so as to bar appellant's claims, despite the fact that, the negligence of its nurses was imputed to the hospital under the doctrine of respondeat superior."
 {¶ 13} Van Doros argues that the trial court erred when it granted summary judgment in favor of Marymount. She specifically asserts that the trial court erred when it retroactively applied the Ohio Supreme Court's decision in Comer, which acted as a bar to her claim. After consideration of her arguments, we agree.
 {¶ 14} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of *Page 7 
law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267.
 {¶ 15} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330,106 S.Ct. 2548, 91 L.Ed. 2d 265; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.
 {¶ 16} In Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107,662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of therecord which demonstrate the absence of a genuine issue of fact ormaterial element of the nonmoving party's claim."' Id. at 296. (Emphasis in original.) The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set *Page 8 
forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 17} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v.McFaul (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24; Link v. LeadworksCorp. (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140.
 {¶ 18} The Ohio Supreme Court's holding in Comer v. Risko stated in pertinent part:
 {¶ 19} "In situations involving vicarious liability, there arises the right of indemnity in the party that is secondarily liable. `Where a person is chargeable with another's wrongful acts and pays damages to the injured party as a result thereof, he has a right of indemnity from the person committing the wrongful act, the party paying the damages being only secondarily liable; whereas, the person committing the wrongful act is primarily liable.' It logically follows that release of the employee from liability would thwart the employer's ability to seek reimbursement from the employee for payments made to the plaintiff by destroying the employer's *Page 9 
subrogation rights. Consequently, a direct claim against a hospital premised solely upon the negligence of an agent who cannot be found liable is contrary to basic agency law."
 {¶ 20} It is clear that the law in Comer precludes a plaintiff from holding a hospital vicariously liable in a medical malpractice action when it cannot hold the attending physician primarily liable. However,Comer specifically addresses the liability of physicians, rather than nurses, as in the present case. Nurses and physicians are distinctly different for purposes of vicarious liability. While physicians essentially serve as independent contractors, retaining primary control over their own actions and practices within a hospital setting, nurses do not share such autonomy. Nurses are subject to the control of the hospital, they are not free to choose their patients, and patients are not free to choose their nurses. In addition, nurses must adhere to hospital guidelines, may be hired or fired at the hospital's discretion, and are under the direct supervision of hospital administration. This applies whether the nurse is employed directly by the hospital or through a staffing agency, as Nurse Madej was in this case.
 {¶ 21} Although Marymount and the Clinic argue that Comer applies on the basis that an agency nurse serves more as an independent contractor than a non-agency nurse, this court is unaware of any case law supporting that conclusion, nor have appellees provided any. All nurses are shielded from primary liability in medical malpractice actions because they are subject to the control of a greater *Page 10 
entity. The law does not distinguish between the liability of agency and non-agency nurses, and neither will this court.
 {¶ 22} Because the Comer decision addresses the liability of physicians, rather than nurses, it does not apply in this case. Accordingly, the trial court erred when it granted summary judgment in favor of Marymount, and Van Doros' first assignment of error is sustained. Since this court finds that the grant of summary judgment in favor of Marymount was improper, Van Doros' remaining assignments of error[1] are rendered moot for purposes of this appeal.
 Cross-Appeal of Marymount and the Clinic {¶ 23} "The trial court erred in denying the good faith motion of Marymount Hospital and Cleveland Clinic Foundation."
 {¶ 24} In their cross-appeal, Marymount and the Clinic argue that the trial court abused its discretion when it denied the good faith motion they asserted against Van Doros. They assert that, in light of theComer decision, Van Doros lacked a good faith basis to continue her complaint. They contend that because Van Doros' complaint lacked good faith, R.C. 2323.42 mandates that reasonable attorney's fees and costs should be awarded in their favor. We find no merit in their argument. *Page 11 
 {¶ 25} To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 50 OBR 481,450 N.E.2d 1140.
 {¶ 26} "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations." State v Jenkins (1984), 15 Ohio St.3d 164, 222, quotingSpalding v. Spalding (1959), 355 Mich. 382, 384-385. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Id.
 {¶ 27} R.C. 2323.42 is the statute that governs good faith motions. It provides in pertinent part:
 {¶ 28} "(A) Upon the motion of any defendant in a civil action based upon a medical claim, dental claim, optometric claim, chiropractic claim, the court shall conduct a hearing regarding the existence or nonexistence of a reasonable good faith basis upon which a particular claim is asserted against the moving defendant. * * * Upon good cause shown by the plaintiff, the court shall grant an extension of the time for the plaintiff to respond as necessary to obtain evidence demonstrating the existence of a reasonable good faith basis for the claim.
 {¶ 29} "(B) At the request of any party to the good faith motion described in division (A) of this section, the court shall order the motion to be heard at an oral *Page 12 
hearing and shall consider all evidence and arguments submitted by the parties. In determining whether a plaintiff has a reasonable good faith basis upon which to assert the claim in question against the moving defendant, the court shall take into consideration, in addition to the facts of the underlying claim, whether the plaintiff did any of the following:
 {¶ 30} "(1) Obtained a reasonably timely review of the merits of the particular claim by a qualified medical, dental, optometric, or chiropractic expert, as appropriate;
 {¶ 31} "(2) Reasonably relied upon the results of that review in supporting the assertion of the particular claim;
 {¶ 32} "(3) Had an opportunity to conduct a pre-suit investigation or was afforded by the defendant full and timely discovery during litigation;
 {¶ 33} "(4) Reasonably relied upon evidence discovered during the course of litigation in support of the assertion of the claim in question;
 {¶ 34} "(5) Took appropriate and reasonable steps to timely dismiss any defendant on behalf of whom it was alleged or determined that no reasonable good faith basis existed for continued assertion of the claim in question.
 {¶ 35} "(C) If the court determines that there was no reasonable good faith basis upon which the plaintiff asserted the claim in question against the moving defendant or that, at some point during the litigation, the plaintiff lacked a good faith *Page 13 
basis for continuing to assert that claim, the court shall award all of the following in favor of the moving defendant:
 {¶ 36} "(1) All court costs incurred by the moving defendant;
 {¶ 37} "(2) Reasonable attorney's fees incurred by the moving defendant in defense of the claim after the time that the court determines that no reasonable good faith basis existed upon which to assert the claim;
 {¶ 38} "(3) Reasonable attorney's fees incurred in support of the good faith motion."
 {¶ 39} Although Van Doros was thus far unsuccessful in her claim against Marymount, it is clear that she reasonably relied upon evidence discovered during the litigation process when she continued her claims against Marymount and the Clinic. Van Doros sued Marymount and the Clinic on the basis that Miller died while he was a patient at their facility and that their employee, Nurse Madej, was responsible for Miller's care at the time of his death. Van Doros asserted her claim under the theory of vicarious liability, believing that Marymount and the Clinic would be liable for Nurse Madej's actions as his employer. Although she did not sue Nurse Madej in a timely manner, causing theComer decision to greatly impact her ability to move forward against Marymount and the Clinic, it is clear that her claims were asserted in good faith.
 {¶ 40} Although the trial court held that Van Doros did not sue in a timely manner, we do not find that the trial court's actions were unreasonable, arbitrary, or *Page 14 
unconscionable when it denied the motion for good faith filed by Marymount and the Clinic. Accordingly, the trial court did not abuse its discretion, and this cross-appeal has no merit.
 {¶ 41} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant recover from appellees costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., ADMINISTRATIVE JUDGE
 JAMES J. SWEENEY, J., and SEAN C. GALLAGHER, J., CONCUR *Page 15 
 APPENDIX
II. The trial court erred by granting defendants' motion to dismiss the complaint despite the fact that appellant filed her motion for leave to amend within one year of the original complaint as stated inGuerro v. C.H.P., Inc.
III. The trial court abused its discretion in allowing appellees to file three summary judgment motions, jointly and separately, against local rules and by extending the dispositive motion cutoff date multiple times, such that appellant was severely prejudiced and unable to rely on any dates set by the court.
IV. The trial court erred by denying appellant access to discovery documents to rebut appellee' summary judgment motions and defendants' motion to dismiss the complaint and then granting these motions.
[1] Appellant's remaining assignments of error are included in the appendix of this Opinion. *Page 1