TISDALE et al., Appellants,

v.

TOLEDO HOSPITAL, Appellee.

[Cite as *Tisdale v. Toledo Hosp.*, 197 Ohio App.3d 316, 2012-Ohio-1110.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–11–1005.

Decided March 16, 2012.

Peter H. Weinberger, Melissa Z. Kelly, and David W. Goldense, for appellants.
John S. Wasung and Susan Healy Zitterman, for appellee.

YARBROUGH, Judge.

{¶ 1} Plaintiffs-appellants, Gary and Tammy Tisdale, appeal from a judgment of the Lucas County Court of Common Pleas denying their motion for leave to file an amended complaint and granting defendant-appellee Toledo Hospital's motion to dismiss.

{¶ 2} The core facts are not controverted. In August 2003, the Tisdales filed medical-malpractice, medical-negligence, and loss-of-consortium claims against the Toledo Hospital and other defendants. These claims arose from the care Gary Tisdale received in August 2002 following abdominal surgery to correct a draining hernia. Dr. Wright performed this surgery at the hospital, and Dr. Banoub was the anesthesiologist. Both Drs. Wright and Banoub had ordered that external-pressure leg cuffs be used on Tisdale's legs to prevent blood clots from forming (a condition known as deep vein thrombosis); however, a clot formed nonetheless and traveled to Tisdale's lungs, where it caused a pulmonary embolism (or emboli). This resulted in brain damage and blindness. Emergency surgery relieved the clots, but not before the oxygen deprivation to his brain had imparted some degree of permanent cognitive impairment. The Tisdales claimed that the hospital's nursing staff never put the pressure cuffs on his legs and that this oversight caused Tisdale's injuries.

{¶ 3} In March 2007, before trial, the Tisdales voluntarily dismissed all defendants except the hospital, Dr. Wright, and Toledo Surgical Specialists, Inc. After trial began, the claims against Dr. Wright and Toledo Surgical were dismissed with prejudice, leaving the hospital as the sole defendant. During trial, the Tisdales argued that the hospital's nursing staff had breached the applicable standard of care by failing to apply the leg cuffs. The case was tried to conclusion, and the jury returned a verdict in favor of the hospital. Among several interrogatories submitted to the jury, one revealed its finding that although the hospital was negligent, its negligence was not the proximate cause of Tisdale's injuries.

{¶ 4} The Tisdales thereafter appealed to this court on, inter alia, a juror-selection issue. Finding error, we reversed on that issue and returned the case for a new trial. *Tisdale v. Toledo Surgical Specialists, Inc.*, 6th Dist. No. L–07–1300, 2008-Ohio-6539, 2008 WL 5197163. The hospital sought further review in the Ohio Supreme Court, but jurisdiction was declined in April 2009. *Tisdale v. Toledo Surgical Specialists, Inc.*, 121 Ohio St.3d 1452, 2009-Ohio-1820, 904 N.E.2d 901. In July 2009, the Supreme Court decided *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939.

{¶ 5} In September 2009, following remand and the assignment of a new trial judge, the hospital moved to dismiss the suit under Civ.R. 12(B)(6) on two

interrelated grounds: first, that it could not be vicariously liable based on the acts of individual nurse-employees who were never made party-defendants and, second, that the Tisdales were barred from continuing their suit against the hospital because the statute of limitations had expired as to the nurses. For both grounds, the hospital cited *Wuerth.* The Tisdales responded by opposing the dismissal motion and, separately, by moving for leave to amend the complaint in order to name the nurses and a surgical assistant involved in Tisdale's care in August 2002.[1] In December 2010, following further briefing and a review of the trial transcript, the trial court denied the Tisdales' motion and granted the hospital's dismissal motion. This appeal followed.

{¶ 6} The Tisdales have assigned two errors for our review, the first of which states:

> The trial court misinterpreted the Supreme Court's holding in *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth,* 122 Ohio St.3d 594, 2009-Ohio-3601 [913 N.E.2d 939], and erroneously granted defendant-appellee's motion to dismiss plaintiffs' complaint.

## I. Standard of Review

{¶ 7} An appellate court reviews de novo an order dismissing a complaint for failure to state a claim. *Perrysburg Twp. v. Rossford,* 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44. In evaluating the dismissal motion under Civ.R. 12(B)(6), we must accept the material allegations of the complaint as true. Any reasonable inferences from those allegations are drawn in the plaintiff's favor. *Johnson v. Microsoft Corp.,* 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 6. For the defendant to prevail, the complaint must be devoid of any provable set of facts that would justify relief or remedy. *Id.*

## II. The Tisdales' Complaint

{¶ 8} In August 2003, the Tisdales' complaint named as defendants the hospital, Toledo Surgical Specialists, Inc., Jonathon D. Wright, M.D., Anesthesiology Consultants of Toledo, Inc., Dr. Ashraf Banoub, M.D., Toledo Clinic, Inc., William C. Sternfeld, M.D., Port Sylvania Family Physicians, Inc., Phillip H. Fisher, M.D., John Doe, M.D., Inc., and John Doe, M.D. It alleged that the hospital provided negligent care and treatment to Tisdale "through physicians and *other medical personnel working within the scope and course of their*

---

1. In moving to amend their complaint, the Tisdales submitted the affidavits of two doctors to support their allegation that the brain injury in August 2002 caused Tisdale's mental incompetency, allegedly rendering him of "unsound mind." This condition, they argued, tolled the limitation period as to the employees under R.C. 2305.16, who then could be joined as parties and for whose alleged failures the hospital was vicariously liable.

*employment with said hospital."* (Emphasis added.) It further alleged that such negligence "result[ed] in [Tisdale's] suffering a pulmonary embolism."[2]

{¶ 9} In its dismissal motion, the hospital argued that because its nurses were not joined as defendants within the one-year limitation period, there remained no viable claim against the hospital alone after *Wuerth.* In response, the Tisdales argued that under Ohio's long-standing doctrine of respondeat superior, there was no need to name an employee or agent as long as the complaint naming the hospital had been timely filed.

{¶ 10} In its judgment entry granting the hospital's dismissal motion, the trial court stated:

> At the time [the Tisdales'] initial suit was filed, it was presumed that a cause of action could be maintained against a hospital alone when one or more of its employees were alleged to have been negligent in performing duties within their scope of employment. However, [*Wuerth*] turned that presumption on its head. * * * [*Wuerth*] held that "[a] law firm may be liable for legal malpractice only when one or more of its principals or associates are liable for legal malpractice."

{¶ 11} Applying *Wuerth* to the Tisdales' claim against the hospital, the trial court ruled:

> [T]his court finds that the rule set forth in *Wuerth* applies equally to legal and medical *malpractice* claims. Just as a law firm cannot be held liable for malpractice when none of its employees are liable for malpractice or have been named as defendants in a legal malpractice action, a hospital cannot be held liable for medical nursing malpractice when the subject nurses have never been named as defendants in the malpractice action.

{¶ 12} In support of their first assigned error, the Tisdales maintain that the trial court misapplied *Wuerth* to their suit against the hospital, given that it was both timely filed and explicitly predicated on reaching the hospital through the negligent acts or omissions of its nurse-employees. The hospital does not deny that it employed the nurses; rather, it urges that we reject the Tisdales' argument because *Wuerth* declared a new rule to govern all principal-agent relationships, including those in the medical context. This rule, it argues, broadly requires the dismissal of a vicarious-liability claim against a hospital for the "alleged *malpractice* of [its] hospital nurses" who were never joined as defen-

---

2. The Tisdales also asserted that "[a]s a direct and proximate result of defendants' singular and/or combined negligence, plaintiff [Tisdale] was caused to suffer severe pain and discomfort, required medical care and treatment, suffered a pulmonary embolism, was rendered brain damaged, required further surgeries and he is permanently and totally disabled and has lost wages and earning capacity and has incurred substantial medical bills."

dants before the statute of limitations ran. The hospital further maintains that the distinction between medical malpractice and other medical (negligence) claims no longer exists under the statute and, even if it did, has no relevance after *Wuerth.*

## III. Analysis

{¶ 13} The parties have taken antithetical positions on how *Wuerth* applies to this case. They debate its effect on the doctrines of respondeat superior and agency by estoppel, the two agency relationships subtended by the concept of vicarious liability. Because post-*Wuerth* medical appeals have proliferated rapidly among the appellate districts in Ohio (as the parties' citations indicate), we will briefly review these agency-liability theories, assess *Wuerth's* impact on them, if any, and then determine *Wuerth's* relevance here.

### A. Respondeat Superior

{¶ 14} "Generally, an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior." *Clark v. Southview Hosp. & Family Health Ctr.,* 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (1994). Under this theory, the liability of an employer for the negligence of the employee is secondary or passive, while the latter's liability is primary. *Id.* Under basic agency law, the employer's direction and control over the details of the employee's work and conduct is what makes their relationship one of *actual* agency. *Costell v. Toledo Hosp.,* 98 Ohio App.3d 586, 592–594, 649 N.E.2d 35 (1994). A hospital is liable for the provable torts of its employees committed within the scope of employment. *Avellone v. St. John's Hosp.,* 165 Ohio St. 467, 135 N.E.2d 410 (1956).

{¶ 15} In *Losito v. Kruse,* 136 Ohio St. 183, 24 N.E.2d 705 (1940), the Ohio Supreme Court articulated the pleading rule of respondeat superior, stating: "For the wrong of a servant acting within the scope of his authority, the plaintiff has a right of action against *either* the master *or* the servant, *or* against both * * *." (Emphasis added.) *See also State ex rel. Flagg v. Bedford,* 7 Ohio St.2d 45, 47–48, 218 N.E.2d 601 (1966) ("This court follows the rule that until the injured party receives full satisfaction, he may sue *either* the servant, who is primarily liable, *or* the master, who is secondarily liable" [emphasis added]). Likewise, we have held that "[if] the injured third party seeks to recover from the employer, all he need do is prove that the employee was negligent and that the employee was acting within the scope of his employment. *There is no requirement that the employee be named as a party to the suit in order to prove his negligent acts.*" (Emphasis added.) *Billings v. Falkenburg,* 6th Dist. No. L–86–017, 1986 WL 9582 (Sept. 5, 1986).

## B. Agency by Estoppel

{¶ 16} "Agency by estoppel is not a direct claim against a hospital, but an indirect claim for the vicarious liability of an independent contractor with whom the hospital contracted for professional services." *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 27. Any liability the hospital has "must flow through the independent-contractor physician." *Id.* at ¶ 28. *See also Tausch v. Riverview Health Inst., L.L.C.,* 187 Ohio App.3d 173, 2010-Ohio-502, 931 N.E.2d 613.

{¶ 17} In general, a principal is *not* vicariously liable for the negligence of an independent contractor, since there is no right to control the manner or details of his work or his judgment. *Comer* at ¶ 18; *Councell v. Douglas,* 163 Ohio St. 292, 295–296, 126 N.E.2d 597 (1955). However, in a series of hospital-liability cases leading to *Comer,* the Ohio Supreme Court developed the agency-by-estoppel doctrine to address the negligence of the independent-contractor physician working in the modern hospital setting and to whom, by contract, the hospital had extended privileges. *Comer* at ¶ 12–16.[3]

{¶ 18} *Comer* purported to decide only the "narrow issue" of whether "a viable claim exist[ed] against a hospital under a theory of agency by estoppel for the negligence of an independent-contractor physician *when the physician cannot be made a party because the statute of limitations has expired.*" (Emphasis added.) *Comer* at ¶ 1. There, two independent-contractor physicians were alleged to have negligently read a patient's chest x-rays at the hospital, resulting in the belated diagnosis and treatment of her cancer. Yet in her complaint for malpractice and negligence, the patient named only the hospital and a different doctor, not the two who had misread her x-rays. The hospital received summary judgment because the statute had run as to these negligent physicians. In affirming this outcome, *Comer* held that "there can be no viable claim for agency by estoppel if the statute of limitations against the independent-contractor physician has expired." *Id.* at ¶ 28. The physicians *"were not named defendants in this case"* before the statute ran, and that failure "extinguish[ed] their liability, if any." (Emphasis added.) *Id.* at ¶ 29. Thus, *Comer* requires that both the physician, as an independent contractor, and the hospital, as the contracting principal, be

---

3. Drawing from equitable estoppel, the Supreme Court created a fictional agency relationship, as between the hospital and the physician, to impose a form of vicarious liability on the hospital for the physician's negligence under certain circumstances. *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 18–19. This fictional agency thus makes it a derivative form of vicarious liability. *Id.* at ¶ 27–28. The plaintiff must first prove the physician's malpractice or medical negligence, after which this primary liability is said to "flow through" to the hospital, making it secondarily liable. *Id.* at ¶ 28–29.

joined in a timely complaint if the plaintiff seeks to impute the physician's primary liability back to the hospital. *Id.*

## C. The *Wuerth* Paradigm

{¶ 19} *Wuerth* began as a legal-malpractice action filed in federal district court. *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 540 F.Supp.2d 900 (S.D.Ohio 2007). National Union, an insurance company against whom a $16.2 million judgment had been returned in an earlier jury trial, sued its former trial counsel and his law firm. The complaint, which named as defendants the attorney, Richard Wuerth, and his firm, Lane Alton, alleged a litany of errors and misjudgments during Wuerth's representation. Both defendants moved for summary judgment, arguing that the malpractice claim against Wuerth had not been filed within the one-year limitations statute, and hence, the firm could not be held vicariously liable.[4] *Id.* at 911. The district court agreed, finding that the statute had expired as to him and that no other attorneys at Lane Alton were ever joined. Without a cognizable malpractice claim against the offending attorney, none could be pursued against the firm alone. *Id.*

{¶ 20} National Union then appealed to the Sixth Circuit Court of Appeals. The Sixth Circuit certified to the Ohio Supreme Court a question of law on the vicarious liability of a law firm. The Supreme Court defined that question as containing "two limited issues":

{¶ 21} "[O]ne, whether a law firm may be directly liable for legal malpractice—i.e., whether a law firm, as an entity, can commit legal malpractice—and two, whether a law firm may be held vicariously liable for malpractice when none of its principals or employees are liable for malpractice *or have been named as defendants.*" (Emphasis added.) *Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, ¶ 12.

{¶ 22} The Supreme Court resolved both those issues in the negative, holding that "a law firm may be vicariously liable for legal malpractice only when one or more of its principals or associates are liable for legal malpractice." *Id.* at ¶ 26.[5] Between stating the certified question and reaching that holding, the court first

---

**4.** For this argument, Wuerth's counsel relied on the Ohio Supreme Court's two-pronged test for determining the timeliness of a legal-malpractice claim in *Zimmie v. Calfee Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989).

**5.** In answering the Sixth Circuit's certified question, the Supreme Court amplified a bit more, stating: "We [hold] that a law firm does not engage in the practice of law and therefore cannot commit legal malpractice directly and that a law firm is not vicariously liable for legal malpractice unless one of its principals or associates is liable for legal malpractice." *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, ¶ 2.

canvassed a series of medical-malpractice precedent involving imputed-liability claims for application to the legal-malpractice context. *Id.* at ¶ 13–18. The court then reviewed its own settled precedent on respondeat superior and agency by estoppel. *Id.* at ¶ 20–24.

{¶ 23} Here, the hospital argues that *Wuerth* announced a new rule to govern vicarious liability in *all* agency relationships in the legal and medical fields. In particular, the hospital seizes for support on the following language:

> Although a party injured by an agent may sue the principal, the agent, or both, a principal is vicariously liable only when an agent could be held directly liable. As we held in *Losito* [136 Ohio St. 183, 24 N.E.2d 705], for example, "[a] settlement with and release of the servant will exonerate the master. Otherwise, the master would be deprived of his right of reimbursement from the servant, if the claim after settlement with the servant could be enforced against the master." *Id.* at 188 [24 N.E.2d 705]. * * * *Similarly, in Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, *we recognized that "[t]he liability for the tortious conduct flows through the agent by virtue of the agency relationship to the principal. If there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the* agent's actions." (Emphasis added.) *Id.* at ¶ 20[.] * * *
>
> *Moreover, this rule applies not only to claims of respondeat superior, but also to other types of vicarious liability.* As we emphasized in [*Strock v.*] *Pressnell* [ (1988), 38 Ohio St.3d 207, 527 N.E.2d 1235], "[i]t is axiomatic that for the doctrine of *respondeat superior* to apply, *an employee must be liable* for a tort committed in the scope of his employment. Likewise, an underlying requirement in actions for negligent supervision and negligent training is that the *employee is individually liable* for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer. Because no action can be maintained against [the agent] in the instant case, it is obvious that any imputed actions against the [principal] are also untenable."
>
> There is no basis for differentiating between a law firm and any other principal to whom Ohio law would apply.

*Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, at ¶ 22–24. (Emphasis added; some citations omitted).

{¶ 24} By referring to *Comer* in the context of the above paragraphs, the hospital maintains that *Wuerth* intended to extend *Comer's* pleading rule to nurses and other nonphysician employees. Specifically, the hospital emphasizes the first sentence of the second paragraph ("this rule applies not only to claims of respondeat superior, but also to other types of vicarious liability"). It asserts that *Wuerth*, by citing and quoting *Comer*, extinguished *Losito's* rule for pleading a hospital's vicarious liability and now requires that its employees be joined as

defendants before the statute runs, even if the complaint is otherwise timely against the hospital.

{¶ 25} We do not agree that the above-quoted passages even remotely suggest that. First, *Wuerth* neither distorted *Losito's* language nor added new requirements. Indeed, it quoted *Losito with approval* and *reaffirmed* the disjunctive choices a plaintiff has in naming defendants under a respondeat superior theory. *Wuerth* at ¶ 21–22 ("a party injured by an agent may sue the principal, the agent, *or* both"). *See also Cope v. Miami Valley Hosp.*, 195 Ohio App.3d 513, 2011-Ohio-4869, 960 N.E.2d 1034, ¶ 18 ("Claims for the negligence of a hospital's *employee, such as a nurse, or here, a technician,* are still governed by the law of respondeat superior, and indeed, *Wuerth* acknowledges that a plaintiff may sue a master, *or* servant, *or* both" [emphasis added]).

{¶ 26} Second, the entirety of the Supreme Court's analysis in *Wuerth* (i.e., ¶ 20–23), is confined to summarizing the development of vicarious-liability precedent involving respondeat superior and *Comer* estoppel up to the time of the Sixth Circuit's certified question. Nothing in those paragraphs on which the hospital relies announced a new rule, much less one that sweeps aside prior doctrine under *Losito* or declares the ascendancy of *Comer* over all forms of principal-agent relationships.

{¶ 27} Third, the point of mentioning *Comer* is *comparative*—hence the use of the word, "similarly." *Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, at ¶ 22. The obvious purpose was to establish a basis for the court's analogical reasoning from vicarious liability in the medical field to the legal-malpractice facts before it. Indeed, the isolated citation to *Comer* is in terms of a general statement (or restatement) of the primary and secondary liability inherent in all agency relationships, something not in dispute here. Establishing the agent's active liability in tort is always a prerequisite to the principal's passive liability. The latter is necessarily dependent on proving the former. That is a basic concept from agency law that respondeat superior and *Comer* estoppel share. *Wuerth* did nothing more than note this in transitional dicta (i.e., the first sentence of ¶ 23). That single reference to *Comer*, however, utterly failed to impose its pleading rule on a plaintiff who seeks to impute liability to a hospital for the provable negligence of those it employs.

{¶ 28} Finally, although styled as a "concurrence," Chief Justice Moyer's separate opinion was joined by four other justices. In explicitly identifying the limits of *Wuerth's* holding, he stated:

I stress the *narrowness* of our holding today. This opinion should not be understood to inhibit law-firm liability for acts like those alleged by the petitioner. Rather, a law firm may be held vicariously liable for malpractice as discussed in the majority opinion. Further, our holding today does not

foreclose the possibility that a law firm may be directly liable on a cause of action other than malpractice. Yet the limited record and the nature of answering a certified question do not permit us to entertain such an inquiry in this case.

(Emphasis added.) *Id.,* 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, at ¶ 35 (Moyer, C.J., concurring).[6]

{¶ 29} In point of fact, the chief justice's cautionary language was probably superfluous. The nature of Wuerth's relation to his firm suffices to place this type of agency in a third classification—one that is distinguishable from both respondeat superior and agency by estoppel. Wuerth was a senior partner and *part-owner* of Lane Alton. While attorneys are generally independent contractors in relation to their clients, Wuerth himself, *in relation to Lane Alton,* was neither an independent contractor nor an employee. *See Stanley v. Community Hosp.,* 2d Dist. No. 2010–CA–53, 2011-Ohio-1290, 2011 WL 941527, ¶ 20. For use as vicarious-liability precedent, those facts render *Wuerth* sui generis. The reach of its holding is thus circumscribed to legal-malpractice actions—or perhaps even more narrowly, as the chief justice implied, to legal-malpractice actions involving the same facts. *Id.* at ¶ 34–35.

{¶ 30} For its reading of *Wuerth,* the hospital cites the First Appellate District's decision in *Henry v. Mandell–Brown, M.D.,* 1st Dist. No. C–090752, 2010-Ohio-3832, 2010 WL 3239118. The hospital claims that the First District applied *Wuerth* to rule that because a patient's malpractice claims against a plastic surgeon were time-barred, he was also precluded from pursuing the plastic-surgery firm under respondeat superior. Attention to the procedural facts, however, reveals a different basis for the result. The patient in *Henry* underwent surgery and had follow-up treatment until March 2007. In November 2007, the patient filed a pro se complaint solely against the firm. Although Dr. Mandell–Brown was mentioned in the body of the complaint, it not only failed to name him, but also *failed even to allege respondeat superior. Id.* at ¶ 7. The complaint also lacked an affidavit of merit, leading the trial court to dismiss it without prejudice for noncompliance with Civ.R. 10. *Id.* at ¶ 2.

{¶ 31} In January 2009, some 22 months after the one-year statute had expired, the plaintiff, now represented by counsel, filed a second complaint for malpractice and negligence. This complaint named both the doctor and the firm *and* sought recovery from the firm under respondeat superior. In granting summary judgment, the trial court ruled that the 2009 claims against both

---

6. In beginning what was essentially a second, though differently composed, majority opinion, the chief justice said: "I write separately * * * to emphasize that today *we answer only the very narrow* certified question before us." (Emphasis added.) *Wuerth,* 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939 at ¶ 27 (Moyer, C.J., concurring). *See also id.* at fn. 3.

defendants were time-barred. *Id.* at ¶ 3. In upholding summary judgment, the First District held that the 2009 complaint, which finally asserted respondeat superior against the firm, was "not filed within the limitations period. And the [2009] respondeat-superior claim against the surgery center could not survive the dismissal of the [untimely] claims against Mandell–Brown." *Id.* at ¶ 14.

{¶ 32} That is not the case here. The Tisdales' 2003 complaint was timely filed against the hospital *and* it alleged a respondeat superior basis for recovery for the negligent acts of medical personnel "working within the course and scope of their employment." Thus, *Henry* offers no assistance to the hospital's position.

{¶ 33} *Wuerth* hardly offers broad insulation from secondary liability for either law firms or hospitals. It merely recognizes that in framing the complaint, the joinder/naming requirement depends on *the tortfeasor's relationship* to the principal. In turn, the issue of whether, or if, the statute of limitations applies— *and to whom*—is determined by that relationship. A reading any more expansive threatens to obfuscate what should be considered settled law in Ohio. We note that the First, Second, and Seventh Appellate Districts have likewise concluded that *Wuerth* does not apply to a hospital's nurse-employees and, under respondeat superior, they do not need to be named in the complaint. *See Meehan v. AMN Healthcare, Inc.*, 1st Dist. No. C–110442, 2012-Ohio-557, 2012 WL 473751, ¶ 11; *Cope v. Miami Valley Hosp.*, 195 Ohio App.3d 513, 2011-Ohio-4869, 960 N.E.2d 1034; *Taylor v. Belmont Community Hosp.*, 7th Dist. No. 090BE30, 2010-Ohio-3986, 2010 WL 3328650, ¶ 30–34.[7]

### D. Malpractice versus medical claims

{¶ 34} Under the present version of R.C. 2305.11(A), the statute of limitations for malpractice actions, the hospital argues that "malpractice" no longer applies to physicians. What was formerly called "medical malpractice," it contends, is now a "medical claim" under R.C. 2305.113. Citing *Wuerth*, the hospital main-

---

7. The Eighth Appellate District reached essentially the same conclusion in a pre-*Wuerth* case. *See Van Doros v. Marymount Hosp.*, 8th Dist. No. 88106, 2007-Ohio-1140, 2007 WL 764728. In analyzing the employment difference between nurses and physicians, the court stated: "It is clear that [*Comer*] precludes a plaintiff from holding a hospital vicariously liable in a medical malpractice action when it cannot hold the attending physician primarily liable. However, *Comer* specifically addresses the liability of physicians, rather than nurses, as in the present case. Nurses and physicians are distinctly different for purposes of vicarious liability. While physicians essentially serve as independent contractors, retaining primary control over their own actions and practices within a hospital setting, nurses do not share such autonomy. Nurses are subject to the control of the hospital, they are not free to choose their patients, and patients are not free to choose their nurses. In addition, nurses must adhere to hospital guidelines, may be hired or fired at the hospital's discretion, and are under the direct supervision of hospital administration." *Id.* at ¶ 20. In other words, agency by estoppel—and its pleading requirement—would apply to negligent nurses only where they were provably independent contractors rather than employees.

tains that because it is not directly liable for Tisdale's brain injury (because it does not "practice medicine" or hold itself out as doing so), it cannot commit "medical malpractice." On the same reasoning, it argues that a hospital cannot commit "medical negligence," for it acts as an entity only through doctors and nurses. And because any claim for negligence against its nurses is now time-barred, the hospital cannot be liable. But that reasoning merely begs the question. The hospital's position would be true only if the alleged tortfeasors were *other than* employees to whom respondeat superior did not apply or if the Tisdales were asserting *primary* liability against the hospital—i.e., without first pleading and proving the active negligence of the employees involved in Tisdale's care. Neither is true here.

{¶ 35} Although the trial court treated the Tisdales' respondeat superior claim as a "medical nursing *malpractice* " claim against the hospital and used that term in its decision, the claim is plainly not for malpractice. As framed in the complaint, the claim is based on the negligence of "medical personnel" working within the scope of their employment. The claim is thus neither a *direct* one nor one for *malpractice,* but is asserted vicariously based on medical negligence.

{¶ 36} The Supreme Court has long held that the negligence of nurses employed by a hospital is not within the definition of "malpractice," as used in R.C. 2305.11(A). *Lombard v. Good Samaritan Med. Ctr.,* 69 Ohio St.2d 471, 473–474, 433 N.E.2d 162 (1982). Rather, a claim asserting that a nurse-employee acted negligently is a type of "medical claim" within the meaning of R.C. 2305.113(A). *Cope,* 195 Ohio App.3d 513, 2011-Ohio-4869, 960 N.E.2d 1034, at ¶ 22 ("No other medical employees are subject to malpractice.") *Compare Holman v. Grandview Hosp. & Med. Ctr.,* 37 Ohio App.3d 151, 153–154, 524 N.E.2d 903 (1987) (suit against hospital based on respondeat superior for the nurse-employee's alleged negligence was an "action in negligence," not a "medical malpractice claim," and thus could proceed even though the nurse was not named as a defendant).

{¶ 37} Second, the text of R.C. 2305.11(A) offers explicit reason to exclude nurse-employees from what traditionally has been called "malpractice." That section states that "an action for malpractice *other than an action upon a medical * * * claim * * ** shall be commenced within one year after the cause of the action accrued." (Emphasis added.)

{¶ 38} R.C. 2305.113(A) then states that "an action upon a *medical * * * claim* shall be commenced within one year after the cause of action accrued."

{¶ 39} Subsection (E) thereof states:

As used in this section:

* * *

(3) "Medical claim" means any claim that is asserted in any civil action against a physician * * * hospital * * * [or] *any employee or agent of a * * * hospital* * * * and that arises out of the medical diagnosis, care, or treatment of any person.

(Emphasis added.)

{¶ 40} Together these sections indicate that medical *employees,* such as nurses, technicians or other assistants, are not subject to malpractice claims but are amenable to *"medical* claims," including those that assert that they negligently acted or omitted "in providing medical care." *See* R.C. 2305.113(E)(3)(b)(i).

{¶ 41} In its appellate brief, the hospital appears to concede that "nursing negligence" is distinguishable from what was called "physician malpractice." While the limitation period for both claims is one year, the statute nonetheless identifies them as separate claims. But in resolving whether *Wuerth* applies here, that distinction is one without a relevant difference. The actual holding in *Wuerth* did not even passingly touch on R.C. 2305.11(A) or 2305.113(A), so the difference between these claims as it relates to the statute is an extraneous issue.[8]

## IV. Conclusion

{¶ 42} *Wuerth* did not overrule or even modify *Losito's* respondeat superior doctrine in negligence actions. Quite the opposite: *Wuerth* acknowledged and retained *Losito's* rule that the plaintiff can choose to sue the employer *or* the employee *or* both. Second, *Comer* does not apply here because agency by estoppel presupposes that the tortfeasor's relationship to the hospital is that of an independent contractor. Finally, *Wuerth* does not apply here for two reasons: first, the unique relationship of the attorney-tortfeasor, Richard Wuerth, to his law firm is distinguishable from that held by a nurse-employee in a hospital and

---

**8.** *Wuerth did* discuss the term "malpractice." Consistent with its previous cases, the court highlighted the narrowness of its meaning, stating:

[I]n *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 527 N.E.2d 1235 * * *, we stated, "The term 'malpractice' refers to professional misconduct, *i.e.,* the failure of *one rendering services in the practice of a profession* to exercise that degree of skill and learning normally applied *by members of that profession* in similar circumstances." * * * Moreover, we have traditionally taken a narrow view of who may commit malpractice. As we explained in *Thompson v. Community Mental Health Ctrs. of Warren* (1994), 71 Ohio St.3d 194, 195, 642 N.E.2d 1102, "[i]t is well-established common law of Ohio that malpractice is limited to the negligence of physicians and attorneys."

(Emphasis sic; and added.) *Wuerth,* 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, at ¶ 15. *See also Hocking Conservancy Dist. v. Dodson–Lindblom Assoc.,* 62 Ohio St.2d 195, 197, 404 N.E.2d 164 (1980) ("only physicians and lawyers" can commit "malpractice" under both R.C. 2305.11(A) and its common-law definition).

second, in precluding legal-malpractice claims directly against a law firm, *Wuerth's* holding was expressly limited to its facts.

{¶ 43} There is no dispute that the Tisdales timely sued the hospital. Nor is it disputed that the complaint asserted negligence by "medical personnel" (the nurses and, allegedly, a surgical assistant) "working within the scope and course of their employment." Therefore, because the hospital employs the alleged tortfeasors, the Tisdales can pursue the hospital vicariously for their damages under a theory of respondeat superior. Because *Wuerth* is inapposite to this case, the trial court erred when it granted the hospital's dismissal motion.

{¶ 44} Accordingly, the first assigned error is well taken.

{¶ 45} The second assigned error states:

The trial court abused its discretion when it denied plaintiffs' motion for leave to file an amended complaint.

{¶ 46} This assignment offers the issue of whether the circumstances of Tisdale's alleged mental disability tolled the statute of limitations such that leave might plausibly be granted to join as parties those employees involved in Tisdale's care. However, since we have held that *Wuerth* does not require a nurse-employee to be named in the complaint in order to pursue the hospital-employer under a theory of respondeat superior, this assignment is moot. App. R.12(A)(1)(c).

{¶ 47} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is hereby reversed and the case remanded for further proceedings.

Judgment reversed.

HANDWORK and PIETRYKOWSKI, JJ., concur.