[Cite as *Birkmeier v. St. Rita's Med. Ctr.*, 2018-Ohio-2343.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### ALLEN COUNTY

JOHN D. BIRKMEIER, ET AL.,

    PLAINTIFFS-APPELLANTS,                     CASE NO. 1-17-57

    v.

ST. RITA'S MEDICAL CENTER, ET AL.,       O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2015 0703

**Judgment Affirmed**

Date of Decision: June 18, 2018

APPEARANCES:

    *Chad M. Tuschman and Peter O. DeClark* for Appellants

    *Chad M. Thompson and Julia S. Wiley* for Appellees

Case No. 1-17-57

**ZIMMERMAN, J.**

{¶1} Plaintiffs-Appellants, John D. Birkmeier and Charlotte E. Birkmeier (collectively referred to as "Appellants"), appeal the judgment of the Allen County Common Pleas Court granting summary judgment to Defendants-Appellees, St. Rita's Medical Center, et al. On appeal, Appellants assert that the trial court: 1) erred in granting Defendants' motion for reconsideration; and 2) erred when it granted summary judgment to Appellees. For the reasons that follow, we affirm the ruling of the trial court.

*Factual Background*

{¶2} Appellant John D. Birkmeier ("John") was diagnosed with prostate cancer on November 5, 2013. (11/10/2016 Tr., John D. Birkmeier Dep. at 54). As a result, John underwent a prostatectomy on December 13, 2013. (*Id.* at 60). A Foley catheter ("catheter") was placed into John's penis as a result of his prostatectomy. (*Id.* at 59; 68).

{¶3} On December 19, 2013, John had a follow-up visit with his urologist, Dr. Craig Nicholson ("Dr. Nicholson")[1]. John reported to Dr. Nicholson that following surgery he had an increase in pain and swelling in his genital area. (*Id.* at 71-72). Dr. Nicholson did not inspect the area, but informed John that "one of the girls [would] be in to remove [his] staples and [the] catheter." (*Id.* at 72). Appellee

---

[1] Dr. Nicholson was one of Cramer's supervising urologists. (*See generally,* 11/10/2016 Tr., Heather Cramer Dep. at 12).

-2-

Heather N. Cramer ("Cramer"), a Certified Medical Assistant ("CMA") employed in Dr. Nicholson's office, removed John's staples without complication. (*Id.* at 74). Cramer then proceeded to deflate the balloon on the catheter, and attempted to remove the catheter. (*Id.* at 75). While reports differ on the amount of force used and duration of Cramer's pulling of John's catheter, it is undisputed that Cramer left John's room to consult with Dr. Nicholson on the catheter removal process. (*Id.*). Upon returning to John's room, Cramer advised John and his wife, Charlotte E. Birkmeier ("Charlotte") that Dr. Nicholson informed (her) that John's swelling was expected. (*Id.* at 76). Cramer then again attempted to remove the catheter, and ultimately used "moderate force" to pull the catheter out. (*Id.*; 11/10/2016 Tr., Heather Cramer Dep. at 18). John testified that the removal process felt "like [his] penis was pulled inside out." (*Id.* at 85).

{¶4} After the catheter was removed, John continued to experience pain and swelling, and returned to Dr. Taylor, another urologist in Dr. Nicholson's office, on December 26, 2013. (*Id.* at 86). During his appointment with Dr. Taylor, John was advised that his penis was showing signs of internal scarring. (*Id.* at 92). At a scheduled appointment on January 2, 2014, Dr. Nicholson removed the stents in John's penis, however, the process was complicated by the formation of strictures. (*Id.* at 95). On January 11, 2014, John went to St. Rita's Emergency Room for urinary retention. (*Id.* at 100).

{¶5} As a result of the strictures in John's penis, John suffered complications which resulted in multiple surgeries, medical treatments, and specialist appointments. (Doc. No. 1). According to John, three separate urologists agreed (with John and Charlotte) that Cramer's removal of John's catheter was the cause of John's injuries. (11/10/2016 Tr., John D. Birkmeier Dep. at 128).

*Procedural Background*

{¶6} On November 30, 2015, Appellants filed a complaint for money damages against Defendants, St. Rita's Medical Center, Heather N. Cramer, Lima Urology, and St. Rita's Professional Services, LLC. (Doc. No. 1). In the first count of their complaint, Appellants alleged that Cramer was "negligent and departed from the accepted standards of medical care in traumatically and negligently removing a Foley catheter from John D. Birkmeier." (*Id.*). Further, Appellants alleged that Cramer, at all times pertinent to the complaint, was an employee of Defendants, St. Rita's Medical Center, Lima Urology, and St. Rita's Professional Services, LLC. (*Id.*). As a result of Cramer's removal of the Foley catheter, John D. Birkmeier alleged that he developed numerous and continuing complications, which led to permanent and partially disabling injuries. (*Id.*). In the second count of their complaint, Charlotte alleged that she had suffered a loss of consortium with John due to Cramer's negligent actions in removing John's catheter. (*Id.*).

**{¶7}** On December 24, 2015, Appellees filed their answer in the trial court. (Doc. No. 6).

**{¶8}** Thereafter, on January 4, 2017, Appellees filed a motion for summary judgment with exhibits in support. (Doc. Nos. 19, 20). Appellants filed a brief in opposition to Appellees' motion for summary judgment on February 15, 2017. (Doc. No. 26).

**{¶9}** Pursuant to Civ. R. 56, the trial court issued its ruling on summary judgment on February 17, 2017. (Doc. No. 31). Specifically, the trial court found that the Ohio Supreme Court case of *Frysinger v. Leech* applied in this instance with regards to the termination of the physician-patient relationship, and further found that the point in time in which a physician-patient relationship terminates and the statute of limitations commences depends upon the conduct of the parties, which is a question of fact. (*Id.* at 4). However, the trial court further ruled that there was no evidence of a physician-patient relationship between St. Rita's Medical Center and Appellants. (*Id.* at 5). Thus, the trial court denied Appellees' motion for summary judgment as to Cramer, Lima Urology, and St. Rita's Professional Services, but granted Appellees' motion for summary judgment with respect to St. Rita's Medical Center, dismissing it as a party in this litigation. (*Id.*).

**{¶10}** On October 25, 2017, the remaining Appellees filed a motion for reconsideration of their motion for summary judgment, which Appellants opposed.

(Doc. Nos. 43, 46). On November 7, 2017, the trial court issued its ruling on the motion for reconsideration, pursuant to Civ. R. 56. (Doc. No. 62). In its decision, the trial court found that reconsideration was permissible, and ruled that Appellants' claim was a medical claim, not a medical malpractice claim. (*Id.* at 3; 7). Additionally, the trial court ruled that since Cramer was a Certified Medical Assistant ("CMA"), the "termination rule" set forth in the *Frysinger* decision did not apply. (*Id.* at 9). Lastly, the trial court ruled that even if the termination rule in *Frysinger* did apply, Appellants' were still beyond the statute of limitations for the filing of their complaint. (*Id.* at 10). As a result, the trial court granted Appellees' motion for summary judgment in its entirety, and dismissed Appellants' complaint. (*Id.*).

{¶11} From this judgment Appellants appeal, and present the following assignments of error for our review:

<u>ASSIGNMENT OF ERROR NO. I</u>

**THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION WHEN IT RULED THAT THE TERMINATION RULE SET FORTH IN *FRYSINGER V. LEECH* (1987), 32 OHIO ST.3d 38, ONLY APPLIES TO PHYSICANS [*SIC*] AND NOT TO OTHER MEDICAL CARE PROVIDERS AS SET FORTH IN O.R.C. 2305.113(3).**

<u>ASSIGNMENT OF ERROR NO. II</u>

**THE TRIAL COURT ERRED WHEN IT DETERMINED A QUESTION OF FACT – THAT BEING, WHEN THE**

**MEDICAL PROVIDER-PATIENT RELATIONSHIP TERMINATED IN THIS CASE.**

{¶12} Since both assignments of error are interrelated, we will address them together.

*Appellants' First and Second Assignments of Error*

{¶13} In their first assignment of error, Appellants argue that the trial court erred by granting Appellees' motion for reconsideration.[2] In their second assignment of error, Appellants argue that the trial court erred by determining a question of fact on summary judgment. For the reasons that follow, we disagree.

*Standard of Review*

{¶14} An appellate court reviews a trial court's decision on a motion for summary judgment *de novo*. *Hancock Fed. Credit Union v. Coppus,* 2015-Ohio-5312, 54 N.E.3d 806, ¶ 15 (3rd Dist.). Trial courts may grant a motion for summary judgment when "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Hamilton v. Hector,* 117 Ohio App.3d 816, 819, 691 N.E.2d 745, 747

---

[2] While the trial court's entry is entitled "Motion for Reconsideration Civ. R. 56," Appellants' argument actually addresses the merits of the trial court's granting of summary judgment, contained within the motion for reconsideration judgment entry. Accordingly, we address these assignments of error under a summary judgment standard of review.

(3rd Dist.1997). The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 292-93, 1996-Ohio-107, 662 N.E.2d 264. Additionally, "'upon appeal from summary judgment, the reviewing court should look at the record in the light most favorable to the party opposing the motion.'" *Hector, supra* quoting *Campbell v. Hosp. Motor Inns, Inc.,* 24 Ohio St.3d 54, 58, 493 N.E.2d 239 (1986). Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).

*Nature of Appellants' Claims*

{¶15} R.C. 2305.113, entitled "time limitations for bringing medical * * * claims," states, in pertinent part:

(A) Except as otherwise provided in this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued.

* * *

(E) As used in this section:

* * *

(2) "Physician" means a person who is licensed to practice medicine and surgery or osteopathic medicine and surgery by the state medical

board or a person who otherwise is authorized to practice medicine and surgery or osteopathic medicine and surgery in this state.

(3) "Medical claim" means any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes the following:

(a) Derivative claims for relief that arise from the plan of care, medical diagnosis, or treatment of a person;

(b) Claims that arise out of the plan of care, medical diagnosis, or treatment of any person and to which either of the following applies:

(i) The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

(c) Claims that arise out of the plan of care, medical diagnosis, or treatment of any person and that are brought under section 3721.17 of the Revised Code;

(d) Claims that arise out of skilled nursing care or personal care services provided in a home pursuant to the plan of care, medical diagnosis, or treatment.

R.C. 2305.113(A);(E).

{¶16} In interpreting R.C 2305.113, the 6th Dist. Court of Appeals held that "medical employees, such as nurses, technicians or other assistants, are not subject

to malpractice claims but are amenable to 'medical claims,' including those that assert that they negligently acted or omitted 'in providing medical care.'" (Emphasis deleted.)  *Tisdale v. Toledo Hosp.,* 197 Ohio App.3d 316, 2012-Ohio-1110, 967 N.E.2d 280, ¶ 40; *see also* R.C. 2305.133(E)(3)(b)(i).

{¶17} Appellants assert their claims against Cramer, as an agent of St. Rita's Professional Services, LLC and Lima Urology.  Further, Appellants assert that since John's injury arose during the course of his medical care and/or treatment, it is a "medical claim" subject to a one-year statute of limitations pursuant to R.C. 2305.113(A);(E)(3).  Furthermore, Cramer (a Certified Medical Assistant) does not meet the statutory definition of "physician" as provided in R.C. 2305.113(E)(2).

*Frysinger Termination Rule*

{¶18} The Ohio Supreme Court, in *Frysinger v. Leech,* discussed the rule regarding the one-year statute of limitations in medical malpractice actions.  In *Frysinger*, the Supreme Court held that: "[u]nder R.C. 2305.11(A), a cause of action for *medical malpractice* accrues and the one-year statute of limitations commences to run (a) when the patient discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the *physician-patient* relationship for that condition terminates, *whichever occurs later.* (Emphasis added.)  *Frysinger v. Leech,* 32 Ohio St.3d 38, 512 N.E.2d 337 (1987), paragraph one of the syllabus.  The Supreme Court's justification for this

"termination rule" under subsection (b) of R.C. 2305.11(A) was the public policy of strengthening the physician-patient relationship. *Id.* at 41. Furthermore, the Court held that the "termination rule" "encourages the parties to resolve their dispute without litigation, and stimulates the *physician* to mitigate the patient's damages." (Emphasis added). *Id.* Lastly, "[e]ither party to the physician-patient relationship may terminate the relationship if the terminating party takes affirmative steps to do so." *Kiser v. Rubin,* 2nd Dist. Montgomery No. 15254, 1995 WL 526380, *4. Such affirmative steps may include the patient refusing further treatment. *Id.*

**{¶19}** Appellants argue that because they did not terminate treatment with St. Rita's Professional Services, LLC until April 21, 2015, the statute of limitations for filing their cause of action did not commence until that date. However, we find this interpretation of *Frysinger* misplaced under the facts presented.

**{¶20}** Notably, Appellants failure to file suit against a specific *physician* is problematic to their *Frysinger argument* because the discovery depositions revealed that John had no complaints regarding the medical care he received from any *physician* during the course of his treatment. (11/10/2016 Tr., John D. Birkmeier Dep. at 120). One of John's *treating physicians*, Dr. Mark Dabagia, confirmed that John's catheter removal (by Cramer) fell below the proper standard of care. (06/14/2017 Tr., Dr. Mark Dabagia Dep. at 27). Similar to Dr. Dabagia's testimony,

Appellants' expert witness, Dr. Tony Luongo, testified that he had no criticisms of any medical provider's care of John, other than Cramer. (08/23/2017 Tr., Dr. Tony Luongo Dep. at 34). Lastly, John's medical records introduced during depositions, failed to indicate that the treatment of John by any *physician* fell below the appropriate standard of care. (*See generally,* (06/14/2017 Tr., Dr. Mark Dabagia Dep., Ex. A, B).

{¶21} Thus, our review of the record reveals that Appellant's claims: a) do not meet the statutory definition of "medical malpractice" claims, and b) do not encompass negligent acts performed by a *physician* upon John. We therefore find that due to the lack of the existence of a physician-patient relationship in Appellants' suit, *Frysinger's* termination rule does not apply here.

{¶22} Nonetheless, Appellants try to portray *Frysinger's* termination rule to further control the termination of "the medical provider-patient relationship" and not the termination of the relationship with the specific negligent provider. (Br. of Appellant at 6). To demonstrate that *Frysinger* termination rule should be expanded to cover a "medical provider-patient" relationship, Appellants direct us to several cases in support of their position. However, in our examination of the case law cited, we find that Appellants' cases are either inapplicable to *Frysinger* or are distinguishable. Specifically, three of Appellants' cases pre-date the *Frysinger* ruling. (*See, Ables v. Riverside Methodist Hosp.,* 10th Dist. Franklin No. 81AP-76,

1981 WL 3392 (decided in 1981); *Niklos v. Riverside Methodist Hosp.,* 10th Dist. Franklin No. 79AP-225, 1980 WL 353247 (decided in 1980); *Graham v. Riverside Methodist Hosp.,* 10th Dist. Franklin No. 79AP-169, 1979 WL 209247 (decided in 1979)).

**{¶23}** Further, Appellants cite *Ram v. Cleveland Clinic Foundation,* in support of their argument when *Frysinger* was applied to a medical clinic and not the individual negligent actor. However, in reviewing *Ram,* we note that the nature of the suit was a medical malpractice claim, not a medical claim. *Ram v. Cleveland Clinic Found.,* 8th Dist. Cuyahoga No. 80447, 2002-Ohio-3644, ¶ 15. Additionally, the patient in *Ram* was treated by a *negligent physician* who left the medical clinic practice, which resulted in the patient's continued treatment with the medical practice. (Emphasis added). *Id.* at ¶ 21.

**{¶24}** Similarly, in *Findlay v. Rubin,* the nature of the patient's lawsuit was a dental malpractice claim, not a "medical claim." *Findlay v. Rubin,* 2nd Dist. Montgomery No. 15315, 1995 WL 783665, *1 (Patient brought a dental malpractice action against a dentist who crowned two of the patient's teeth). In ruling that the statute of limitations did not commence when the negligent dentist left the practice of dentistry, *Findlay* held:

> *[P]hysicians and dentists* frequently practice in professional groups. Patients whose health care plans require them to use a particular group have a continuing relationship with the group, as well as with any single member of it. An individual patient might be seen by several

members of the group in succession for a single course of treatment. Interchangeability of providers and patients in that respect is one of the goals of group practice. Tolling the limitations time while an injured patient is treated *by another physician or dentist* in the group would serve the goals of *Frysinger v. Leech*; to encourage resolution of the dispute without litigation and to stimulate the physician to mitigate the patient's damages. Though the treating *physician* is not the one whose negligence caused the injury, the group of which he or she is a member is liable for the patient's injury, and from the patient's perspective the distinction may be of slight significance.

(Emphasis added.) *Id.* at *2. Thus, in *Findlay,* the Second District Court of Appeals never analyzed whether a *dental assistant's* negligence would be subject to the *Frysinger* termination rule when the patient continued to treat with the supervising dentist. As such, we find no compelling reason to expand the holding of *Findlay* to the case before us.

**{¶25}** Lastly, Appellants cite *Amadasu v. O'Neal* in support of their proposition that the termination rule applies when a plaintiff ceases treatment with a medical entity, and not the specific negligent provider. Similar to *Ram* and *Findlay, Amadasu* involved a lawsuit against *physicians* and a hospital. *Amadasu v. O'Neal,* 176 Ohio App.3d 217, 2008-Ohio-1730, 891 N.E.2d 802, ¶¶ 1-2. Accordingly, we are not persuaded by Appellants' argument that case law supports expanding *Frysinger's* termination rule to a situation where no negligence is alleged on the part of a physician.

**{¶26}** In our review of the issue presented, we find other courts have addressed the issue of a medical employee's alleged negligence. Specifically, the

Tenth District Court of Appeals in *Grubb v. Columbus Community Hospital* held that a claim arising from an orderly's negligence was a "medical claim" for purposes of the one-year statute of limitations. *Grubb v. Columbus Community Hosp.,* 117 Ohio App.3d 670, 674, 691 N.E.2d 333 (10th Dist.1997). The *Grubb* court further held that *Frysinger's* termination rule "does not apply * * * where the alleged tortfeasor is a[n] * * * employee who does not have an ongoing professional relationship with the patient." *Id.* at 677.

{¶27} Lastly, this Court, in *Grandillo v. Montesclaros,* discussed the *Frysinger* termination rule when we held that:

> [T]he *Frysinger* rule *specifically addressed the relationship between a physician and patient.* When a hospital or hospital employee does not have an on-going relationship with the patient, this rule has no logical application.

(Emphasis added.) *Grandillo v. Montesclaros,* 137 Ohio App.3d 691, 701, 2000-Ohio-1839, 739 N.E.2d 863. Because the record before us fails to implicate negligence by any physician, we cannot apply the *Frysinger* termination rule in this appeal. Moreover, as Appellants were aware, or should have been aware, that John's injury occurred on December 19, 2013, their complaint filed on November 30, 2015 was outside of the one-year statute of limitations set forth in R.C. 2305.113(A).

{¶28} Nevertheless, even if we were to find *Frysinger* applicable here, Appellants' testimony demonstrates that John *unequivocally terminated his*

*treatment with Cramer* in March, 2014. (*See,* 11/10/2016 Tr., John D. Birkmeier Dep. at 125) (John and Charlotte informed Cramer on March 3, 2014 that she (Cramer) was not touching John, as she (Cramer) was the cause of John's medical problems); (11/10/2016 Tr., Charlotte E. Birkmeier Dep. at 44) (Charlotte informed Cramer that she (Cramer) was not permitted to remove John's catheter). As the record affirmatively supports that Appellants terminated their treatment with Cramer on March 3, 2014, the filing of Appellants' complaint on November 30, 2015, was outside of the one-year statute of limitations for filing a medical claim.

*Question of Fact*

{¶29} Appellants next argue that the trial court improperly decided an issue of fact. Specifically, Appellants argue that the determination of a medical provider-patient relationship is a question of fact for the jury to decide. In support of their argument, Appellants direct us to the trial court's first judgment entry on summary judgment, dated February 17, 2017, wherein the trial court ruled:

> Since plaintiffs [Appellants] pointed to evidence that showed Mr. Birkmeier continued to submit to further treatment related to the issue of the removal of the catheter by medical providers or personnel employed by St. Rita's Professional Services until April 21, 2015, there is a genuine issue of fact as to whether the medical provider-patient relationship terminated prior to a year before the lawsuit was filed.

(Doc. No. 31 at 4). We find Appellants' argument lacks merit for two reasons. First, as we held above, the medical provider-patient relationship does not apply under the

-16-

plain language of *Frysinger*. And secondly, we agree with the Second District Court of Appeal's decision in *Findlay*, wherein it determined that the termination of a dentist patient relationship did not present a question of fact when it was undisputed that the dentist patient relationship ceased on June 28, 1993. *Findlay*, 2nd Dist. Montgomery No. 15315, 1995 WL 783665, *3. Similar to the facts present in *Findlay*, our record contains no evidence that John was treated by Cramer after March 3, 2014.[3] As such, there is no evidence that John was ever treated by Cramer after March 3, 2014. Thus, the filing of Appellants' lawsuit on November 30, 2015 was not within the one-year statute of limitations as set forth in R.C. 2305.113(A).

{¶30} Accordingly, we overrule Appellants' first and second assignments of error.

*Conclusion*

{¶31} Having found no error prejudicial to the Appellants herein in the particulars assigned and argued, we overrule Appellants' first and second

---

[3] We acknowledge that Appellants did present evidence that Cramer signed one of John's medical records on April 17, 2015. However, Appellants did not properly submit this evidence to the trial court, and as a result, this document cannot be considered by this Court on review. *See generally, Dunigan v. State Farm Mut. Auto Ins. Co.,* 9th Dist. Lorain No. 03CA008283, 2003-Ohio-6454, ¶ 10 *quoting* Civ.R. 56(C) (upon a motion for summary judgment, the court is only to consider the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact). While a trial court may consider other documents under certain circumstances, Appellants did not follow the proper procedure to allow their evidence to be considered by the trial court.

assignments of error and affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**